Syllabus.

---

## Staunton.

## HOMESTEAD FIRE INSURANCE CO. v. ISON.

### September 9, 1909.

1. INSURANCE—*Premiums—Credit Given by Agent.*—A general agent of an insurance company who is intrusted with policies duly signed by the officers of the company, and who has power to countersign and deliver such policies, and who is responsible to the company for the premiums and collections on all policies issued by him, binds the company by an agreement to extend credit to the insured, especially when there is no provision to the contrary in the policy.

2. TIME—*Computation—Excluding First Day.*—When an act is to be performed within a specified period from or after a day named, the rule is to exclude the first day designated, and to include the last day of the specified period. So computing the time there are not thirty days between February 8, 1907, at noon and ten o'clock P. M., March 10, 1907.

3. INSURANCE—*Policy—Date of Issue.*—The time date of issue of the policy in the case in judgment is the day when it was delivered and accepted. Then it was that the minds of the parties met for the first time upon the terms of the contemplated contract. "Issued," in this connection, means when the policy is made and delivered, and is in full effect and operation.

4. INSURANCE—*Policy—"Issuance"—Inventory.*—Where the assured is required to take an inventory of his stock within thirty days from the issuance of a policy, the time date of issuance is the day of delivery of the policy to the assured, and he has the whole thirty days in which to take the inventory without avoiding his policy.

5. INSURANCE—*Cancellation of Policy—Misrepresentation of Agent.*—Where an insurance agent, by misrepresentation, secures from the wife of assured, in his absence, possession of a policy, and cancels it of his own initiative, and fails to give the assured five days' notice of such cancellation as required, before the fire, the policy must be regarded as in full force and effect at the time of the fire.

6. INSURANCE—*"Iron Safe" Clause—Bookkeeping.*—The bookkeeping required by the "iron safe" clause in fire insurance policies begins from the date of the inventory which the assured is required to take.

7. INSURANCE—*Separation of Damaged Goods—Effect of Failure to Separate.*—The provision of the policy of insurance in this case requiring the assured, after the fire, to separate the damaged and undamaged goods is merely directory, and a failure to comply with it does not avoid the policy, but only has the effect of reducing the recovery by such amount as was lost to the company by the failure to comply.

8. EVIDENCE—*Character—General Reputation.*—Witnesses as to general character of a party must speak of his general reputation among the people who know the party, and not as to special reputation formed on a single occasion.

9. APPEAL AND ERROR—*Misleading Instructions—Harmless Error.*—This court will not reverse a judgment because the trial court gave an instruction which was not clear and was susceptible to misconstruction, if it clearly appears from the whole record that the party objecting was not prejudiced by it.

Error to a judgment of the Circuit Court of Wise county in a proceeding by motion for a judgment. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Bond & Bruce,* for the plaintiff in error.

*Morton & Parker* and *Irvine & Morison,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

In this case the plaintiff, George Ison, obtained against the defendant Fire Insurance Company a verdict and judgment for $750.00, upon a policy issued by the company to secure the plaintiff from loss by fire of his stock of merchandise. This judgment is brought under review by the present writ of error.

It is contended by the insurance company that the policy never became effective, because the premium was never paid.

This position is not sound. The record shows that the Appalachia Insurance Agency, composed of Brooks & Sparks, were general agents of the defendant company, with blank policies signed by the president and secretary of the company in their hands to be delivered by them to applicants for insurance. They had full authority to deliver policies, collect premiums and make rates. The policy in this case receipts the payment of the premium, $48.00, and recites that it was issued in consideration of that premium; and further shows on its face that as between the company and the Appalachia Agency the premium in question was considered as fully paid. The plaintiff testified that when the agent delivered the policy to him he offered to pay him the whole amount in money, and was told that if he would pay $2.00 and some potatoes, and settle an account he had against the agent on his books it would be sufficient, and that he (the agent) would trade out the balance with him, or call on him later if he needed more money. The agent says that he asked the plaintiff for $5.00; that the latter gave him $2.50, and said he was going to Kentucky to see about some money and would settle in full when he returned; that he told him that would be all right and delivered the policy.

The defendant was bound, in either view of the transaction. The company having given its agents full power to collect the premium, and having treated the premium as paid, cannot now call in question the transaction of its agent in extending credit to the insured for a part of the premium. The policy in this case contains no condition that it shall not be effective' unless the premium be paid, and nothing to show that the payment of the premium in money is a prerequisite to the taking effect of the contract.

An agent who has power to countersign and deliver policies and who is responsible to the company for the premiums and their collection on all policies issued by him, binds the company

by an agreement to extend credit to the insured. A valid payment may be made in other ways than in cash, if there has been an assent thereto by the insurer or its agent. 19 Cyc. 605, 606.

In the case of *Woody* v. *Old Dominion Insurance Co.,* 31 Gratt. 362, 31 Am. Rep. 732, where this subject is discussed by Judge Burks, the syllabus says: "The terms of the insurance company having been agreed upon between the applicant for insurance and the agent of the insurance company, the applicant tenders to the agent the money for the premiums; but the agent, living in the house and being indebted to the applicant for rent, tells him he has in his hands money belonging to him for rent, and will credit him for that amount. This was a valid payment of the premium."

In the case of *Wytheville Insurance, &c.,* v. *Teiger,* 90 Va. 277, 18 S. E. 195, the policy provided that the company should not be liable until the premium was actually paid to it, thus making the case very much stronger in favor of the company than is the case at bar. Judge Lewis, in delivering the opinion of the court, says: "The firm of Milch, Fleishner & Co. were not only brokers, but, as just said, they were agents of the defendant company. Policies were sent to them directly from the home office, the premiums on which they were authorized to receive, and they were ostensibly authorized to waive a cash payment. Hence, when they delivered the policy in the present case, without requiring payment of the premium, the presumption is a credit was intended, and that was a waiver of the condition of prepayment. If in such a case a waiver were not implied, the delivery of the policy would be not only an unmeaning but a deceptive and fraudulent ceremony." Citing 2 May on Ins. (3rd ed.), sec. 360; *Miller* v. *Life Ins. Co.,* 12 Wall. 285, 20 L. Ed. 398. See also the recent case of *Life Ins. Co.* v. *Hairston,* 108 Va. 832, 62 S. E. 1057.

It is further contended that the plaintiff violated the clause of the policy requiring an invoice of the stock of goods to be made within thirty days from the issuance of the policy. In this

connection will be considered plaintiff's instruction No. 2, which tells the jury that under the terms of the policy sued on the plaintiff was not required until thirty days after the issuance of the policy to take the inventory of the stock on hand; and if they believe from the evidence that it was not until the 13th day of February, 1907, or until some day after the 8th day of February, 1907, that the agent of the defendant delivered the policy in question to the plaintiff, and that on such date the minds of the parties for the first time met for a contract of insurance, and that the contract was on such date consummated, then the thirty days began to run only from such date, notwithstanding the policy bore date the 8th day of February.

The policy provided that unless an inventory of the goods mentioned therein be made within thirty days of its issuance, the policy should be null and void. It was dated February 8, 1907, and was to take effect at noon of that day. The fire occurred at eleven o'clock Sunday night of the 10th day of March, 1907.

When an act is to be performed within a specified period from or after a day named, the rule is to exclude the first day designated and to include the last day of the specified period. The great weight of authority is in favor of counting one of the days and the usual practice is to exclude the first day and include the last.

Assuming that the thirty-day period, in the case at bar, began to run from the date of the policy, and excluding that day, the last day of the period fell on Sunday. Whether or not under such circumstances Sunday is to be counted (*Bowles* v. *Brauer*, 89 Va. 466, 16 S. E. 356), we need express no opinion, for whether it be counted as part of the thirty days or not, the time had not expired, by one hour, at eleven o'clock Sunday night, March 10.

It is not necessary, however, to rest the conclusion that the time had not expired upon the narrow margin of the hour. The record shows that on or about February 8, the date of the

policy, the insured and the agent discussed the subject of insurance, and $1,000 was agreed upon as the amount for which the insured would like to have a policy. Several days later, on or about February 13, the agent returned and delivered the-policy in question, and the insured then, for the first time, promised to pay the premium. Up to that time it does not appear that the rate of insurance or any of the numerous details and conditions of the contract had been considered or agreed upon. The very condition now relied on to nullify the contract was then seen and understoood for the first time. When the policy was tendered, on or about February 13, the insured would have had the right to reject it. When the policy was delivered by the agent and accepted by the insured, the minds of the parties met for the first time upon the terms of a contemplated contract.

The condition under consideration was that the policy should be void unless the inventory mentioned was made within thirty days of its *issuance.* The true issuance of the policy is the day of its delivery to the insured. If the issuance of the policy meant from its date, then the provision under consideration for thirty days in which to make the inventory would, in most cases, be greatly impaired. Instead of having thirty days within which to take the inventory, by antedating the policy or delaying its delivery, the time allowed could be reduced to a few days or to none at all.

Lexicographers define "issuance" to be the act of putting, sending or giving out. The legal definition of the word is practically to the same effect—to send out officially; to deliver for use; to put into circulation.    23 Cyc. 358.

We are aware of no Virginia case directly in point; but see *Life Ins. Co.* v. *Hairston, supra.*

"Issued," as used in reference to the issuance of an insurance policy, means when the policy is made and delivered, and is in full effect and operation.    See *Kansas Mut. Life Ins. Co.* v. *Coalson,* 22 Tex. Civil App. 64, 54 S. W. 388, 392; *Sisk* v. *Citizens Ins. Co.,* 16 Ind. App. 565, 45 N. E. 804.

In the case last cited Chief Justice Comstock, in delivering the opinion of the court, said: "It is further urged that the allegation, 'that the plaintiff procured to be issued to her a policy of insurance,' is not equivalent to an allegation of delivery to and acceptance of such policy by the plaintiff. Conceding the learning of counsel, we think they are in error in this interpretation. A standard dictionary defines the word 'procured,' 'to acquire for one's self,' 'to cause'; and the word 'issue,' 'to deliver for use.' "

The policy in question not having been delivered and accepted by the insured until about the 13th of February, 1907, and the fire having occurred on March 10, there remained several days in which the insured could have complied with the condition requiring an inventory of the stock of goods covered by the policy.

It is further contended that the policy sued on was canceled before the fire.

The record shows that the agent, about the 28th of February got the policy from the wife of the insured, while her husband was absent, upon the pretense that he had charged too much and wanted to refund three or four dollars, promising to return it that night or the next morning. He immediately marked it canceled, and noted on the policy that he had canceled it on account of assured letting his stock run down.

The agent having secured the policy by misrepresentation, and having canceled it on his own initiative, and having failed to give the assured five days' notice, as required, before the fire, of such cancellation, the policy must be regarded as in full force and effect at the time of the fire. Instruction No. 1 for the plaintiff correctly states the law on this point.

It is further contended that no books were kept, as provided by the "Iron Safe" clause.

The record does not sustain this contention; but a sufficient answer is, that the bookkeeping had to begin only from the date of the inventory which was required to be taken, and the date

for this, as already seen, had not expired at the date of the fire. *Bray* v. *Va. F. & M. Ins. Co.,* 139 N. C. 390, 51 S. E. 922.

There is no merit in the contention that the notice of loss given to the company was insufficient. The day after the fire the insured put the claim in the hands of his attorneys, who immediately wrote and posted a letter to the Appalachia Agency, giving them notice of the fire. The agent of the company was present at the fire, and, therefore, had full knowledge of the loss. There was a delay of a few days in giving the defendant company notice, which was occasioned by the fact that the agent had procured the policy by misrepresentation, promising to return it. Due diligence, under all the circumstances, was exercised in giving notice of the loss, and this is all that is required. *Woody* v. *Old Dominion Ins. Co.,* 31 Gratt. 362, 31 Am. Rep. 732.

The charge that the insured did not separate the damaged and undamaged goods after the fire is not well taken. The evidence of the assured, taken as a whole, shows satisfactorily that he complied with the requirement of the policy in this respect. This provision of the policy is, however, directory, and a failure to comply with it would not avoid the policy, but would only have the effect of reducing the recovery by such amount as was lost to the company by the failure to comply.

Objection is made to the rejection of the evidence of John A. Craft. This witness was called to speak as to the general character of the assured. General reputation among the people who know the man is the issue in such a case. The witness Craft expressly states that he knows nothing about the reputation of the insured in this sense. All he professed to know was his special reputation formed on a single occasion when the insured attended court as a witness twenty miles from his home.

It is further insisted that it was error to give for the plaintiff instruction No. 4, which tells the jury that if they find for the plaintiff they shall find for three-fourths the actual cash value

of the total stock of goods insured by the policy in question, as fixed by them, not exceeding $1,000.

Under the terms of the policy the plaintiff was entitled to recover only three-fourths of the value of the goods damaged or destroyed by fire. It is insisted that this instruction tells the jury to find three-fourths of the stock of goods insured. The words "as fixed by them" in the instruction shows that the value of the goods destroyed was to be fixed by the jury in estimating the damages. The instruction, as framed, however, was not clear, and unexplained might have been misinterpreted. The record, however, satisfactorily shows that the defendant company suffered no prejudice by reason of this instruction. The circuit court certifies that the instruction was fully and clearly explained to the jury by counsel for the plaintiff, so that, in its opinion, the jury could not have been misled thereby. Further, the evidence abundantly sustained the conclusion of the jury, that the value of the goods destroyed was $1,000. The plaintiff claimed $1,600, and a disinterested witness, who was in position to know, placed the value at $1,000, and the jury took his estimate, finding a verdict for $750, or three-fourths of the $1,000 valuation. It is clear from the whole record that the defendant was not prejudiced by the instruction under consideration; and where that is the case the judgment will not be disturbed. *Richmond Ry. Co.* v. *Garthright*, 92 Va. 627, 24 S. E. 267, 53 Am. St. Rep. 839, 32 L. R. A. 220; *Leftwich* v. *City of Richmond*, 100 Va. 164, 40 S. E. 651.

Other objections to instructions have been considered and disposed of in connection with the assignments of error, to which we have already directed our attention.

Upon the whole case we are of opinion that the judgment complained of must be affirmed.

*Affirmed.*