NELLIE S. COLEMAN, executrix, *vs.* NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY & others.

Suffolk.    October 20, 1920. — November 29, 1920.

Present: RUGG, C. J., DE COURCY, CROSBY, & CARROLL, JJ.

*Insurance*, Life: assignment of policy, surrender of policy. *Evidence*, Extrinsic affecting writings. *Words*, "Anniversary of issue."

A policy of life insurance was dated April 17 of a certain year, was delivered to the insured on April 18 and by its terms provided for the payment of premiums annually on May 1. An assignment in writing of the policy, after by its provisions it had become a "paid-up policy," gave to the assignee a right to surrender the policy for its surrender value "at any anniversary of issue." *Held*, that the meaning of the words "anniversary of issue" was not clear from the documents themselves, and must be interpreted in the light of all the circumstances attending their use.

It appeared that the assignment above described was upon a printed blank furnished by the insurance company for general use by its policy holders; that the contract of insurance did not come into being until the payment of the premium and the delivery of the policy; that the date of the payment of the premium was the date as of which the value of a paid-up policy was computed; that the schedule of cash surrender values of the policy, which appeared upon the policy, was computed as of the date of the payment of the premium, and that all mathematical and actuarial calculations as to the policy had to be made as of the date of the payment of the premium. *Held*, that the words in the assignment, "anniversary of issue," meant May 1.

BILL IN EQUITY, filed in the Superior Court on November 8, 1916, by the executrix of the will of George D. Coleman against the New England Mutual Life Insurance Company and Amos Wakelin and Henry W. Marston, copartners, for an accounting as to the proceeds of a policy of insurance issued by the defendant company upon the life of the plaintiff's testator.

The suit was heard by *Jenney*, J., a commissioner having been appointed under Equity Rule 35 to take the testimony. Facts found by the judge are described in the opinion. By order of the judge a final decree was entered dismissing the bill; and the plaintiff appealed.

*C. A. Warren*, (*W. Howland* with him,) for the plaintiff.

*G. Hoague*, for the defendants.

De Courcy, J.   The defendant insurance company delivered to George D. Coleman on April 18, 1900, its policy insuring his life in the sum of $5,000, payable at his death to his wife, Augusta D. Coleman, and, in the event of her prior decease, to the insured's estate.   The policy was dated April 17, 1900, but by its terms the premiums were payable annually for twenty years on the first day of May.   The interest of Augusta D. ceased on her death, April 1, 1909.   By reason of the non-payment of the premium due May 1, 1911, said policy in accordance with its terms and by virtue of the non-forfeiture statute applicable thereto (St. 1894, c. 522, § 76), became a paid-up policy as of May 1, 1911, for $2,303, payable to his estate at his death.

Coleman borrowed $1,100 from the insurance company on March 29, 1913, pledging the policy as collateral security for the repayment of the loan with interest.   On July 15, 1913, he borrowed $75 from the defendants Marston and Wakelin, giving them his note payable in thirty days and an assignment of all his right, title and interest in the policy as security.   They were informed by the company that the total cash surrender value of the policy as of May 1, 1914, was $1,189.39.   Instead of paying the note as requested, Coleman sent to Marston a new thirty days note for $75 dated August 15, 1913.   This note was never paid, although payment was repeatedly demanded.

On November 6, 1913, Marston and Wakelin forwarded to the insurance company their assignment of the policy, together with a draft of $1,112.67 in payment of the insurance company's loan to Coleman.   They received from the company the original loan certificate and policy, thus acquiring and succeeding to all the company's rights under its pledge from Coleman.   On April 28, 1914, Marston, seeing that the cash surrender value of the policy in question was being eaten up by the interest upon the two loans, applied to the insurance company for a surrender value receipt. On April 30, 1914, having received from the company the papers necessary in order to obtain a surrender, Marston wrote to the insured notifying him that unless he received some word at once he would be compelled to surrender the policy in part payment of the loan.   Coleman paid no attention to this notice.  On May 6 the policy and surrender receipt were forwarded to the company and on May 8 a draft for $1,208.84 was sent to Marston and

Wakelin in payment of the cash surrender value of the policy and the reversionary additions thereto. This was $17.89 less than the amount due them from Coleman. In subsequent correspondence with the insurance company, Coleman contended that the amount paid to the assignees was less than the cash surrender value. He made no claim therein that the policy had been surrendered on the wrong date, or that May 1 was not the proper date for the computation of the cash surrender value. The insured died on January 14, 1915. The plaintiff, as executrix of his will, seeks in this suit to recover the full value of the paid-up policy at the time of his death ($2,303) less the indebtedness due to the defendants; claiming that under the terms of the policy and the assignment Marston and Wakelin had no authority to surrender the policy when they did. At the trial she conceded that it made no difference whether the policy was surrendered on May 1 or May 8; but claimed that April 17, the date appearing on the face of the policy, was the only date on which it could be surrendered.

The assignment gave to Marston and Wakelin the right to surrender the policy "at any anniversary of issue," and to receive the cash surrender value thereof. Ordinarily by the "issue" of an insurance policy is meant its delivery and acceptance whereby it comes into full effect and operation as a binding mutual obligation. *Homestead Fire Ins. Co.* v. *Ison*, 110 Va. 18, 23. *Logsdon* v. *Supreme Lodge Fraternal Union of America*, 34 Wash. 666. Sometimes it is used in the sense of the preparation and signing of the instrument by the officers, as distinguished from its delivery to the insured. See *Dargan* v. *Equitable Life Assurance Co.* 71 S. C. 356, 361; *Kansas Mutual Life Ins. Co.* v. *Coalson*, 22 Tex. Civ. App. 64, 73; *Stringham* v. *Mutual Ins. Co.* 44 Ore. 447. In the assignment under consideration, while the parties are at issue as to the meaning of the word as used by them, they reject both these interpretations, as not being in accord with their intention. It is insisted on the part of the plaintiff that by "anniversary of issue" was meant the anniversary of the date of the policy. The defendants, on the other hand, contend that the date contemplated is May 1, which was the time fixed for the annual premium payment, and the date as of which the policy became a paid-up one. We can determine the meaning which the parties put upon this

doubtful language only by applying it in the light of the circumstances in which the assignment was executed and the facts to which it related.

The parties did not formulate this particular contract, but used one of the general forms furnished by the insurance company for use when policies were to be assigned as collateral security. The words in question, "at any anniversary of issue," were part of the printed blank. The language was chosen by the company for general use by its policy holders, and presumably with a view to uniformity and convenience in dealing with cash surrender values. If it were deemed desirable to select the date of the policy as determining the time a policy might be surrendered for its cash value or paid-up insurance, presumably "date" and not "issue" would have been inserted in the assignment blank. Further, the date was not of vital importance. In accordance with the terms of the application there would be no contract of insurance until the premium was paid and the policy delivered. For many and various reasons this was likely to be subsequent to the date when the policy is sent out from the home office. So, too, the date of delivery, uncertain and unrecorded, probably would not be selected as the time fixing the rights of the policy holder on surrender of his policy. The important date is that when the annual premium was payable, as of which the value of a paid-up policy was computed.

The parties here were dealing with a paid-up policy, whose value was computed as of May 1, 1911. The "anniversary of issue" referred to in their assignment was material only with reference to the surrender of that policy before maturity, and receiving the value thereof. On the original policy that value, computed in accordance with the provisions of the statute, was fixed as of May 1; and a schedule of the cash surrender value as of that date each year until maturity was set forth in the policy. The annual premium was payable on May 1; and its payment carried the policy to May first of the ensuing year, regardless of when it was signed or delivered. It necessarily followed that all mathematical and actuarial calculations had to be made as of that date in each year, by the insurance department of the Commonwealth and by the insurance company. The net values computed were those at the end of the year, calculated as of the

said premium date. As found by the trial judge, "The policy in question was valued by annual periods in accordance with mortality tables contemplating a year's insurance, the date taken was the date between which the insurance is in force, namely, from the time when the first premium was paid up to the time when the policy would run out by reason of the expiration of one year — in this case the date taken was the first of May." And "Whether the contract between the parties subsequent to May 1, 1911, be called a new 'statutory policy' or a modification of the original policy, the insurance covered by it started to cover the risk in the new amount of $2,303 on the first day of May and this was the only date of any mathematical or actuarial significance in connection with this policy at any time." These facts must have been known to Marston and Wakelin, who were general agents of said insurance company in Philadelphia; and the insured had earlier experience in adopting the same form of assignment.

It is not clear what the parties meant by the language in question. But in view of what they were attempting to do, and the attendant circumstances, we cannot say that the trial judge was plainly wrong in finding that May 1 was "the 'anniversary of issue' referred to in the assignment" and that "the policy was properly surrendered." See *McDougald* v. *New York Life Ins. Co.* 146 Fed. Rep. 674; *Wilkie* v. *Insurance Co.* 146 N. C. 513.

*Decree affirmed.*