No. 33,959

H. A. Fisher, *Appellee*, v. Central Surety and Insurance Corporation and Charles Van Donge, *Appellants*.

(86 P. 2d 583)

Opinion filed January 28, 1939.

*Austin M. Cowan, C. A. McCorkle, W. A. Kahrs, Robert H. Nelson* and *Henry L. Butler*, all of Wichita, for the appellants.

*C. H. Brooks, Howard T. Fleeson, Fred W. Aley, Carl G. Tebbe, Wayne Coulson* and *Paul R. Kitch*, all of Wichita, for the appellce.

The opinion of the court was delivered by

Allen, J.: This was an action to recover damages resulting from an automobile collision which occurred July 13, 1937, near the intersection of U. S. highway 81 and a country road about one mile south of the city of Newton. Plaintiff prevailed, and defendants appeal.

U. S. highway 81 at the place of the collision runs north and

south; the country road runs east and west. Highway 81 at the time of the collision was a two-lane paved highway eighteen feet wide; the country road was thirty to thirty-five feet wide from shoulder to shoulder. There were state highway stop signs on the country road located about fifteen feet back from the arterial highway.

The intersection in question had several filling stations located on both sides of highway 81. A café was located on the southwest corner; south of the café was the Donaldson filling station, and south of the Donaldson filling station was the Cities Service filling station. From the evidence it is clear that the intersection was a much used, heavily traveled part of the highway, and well lighted by lights from the filling stations. Trucks parked on both the east and west sides south of the country road. On the northwest corner of the intersection was a filling station known as the Phillips or Heckerdon station. The pumps of this station were set back about fifteen feet from the slab on highway 81, the south pump being about fifteen feet north of the country road. The collision occurred near this filling station.

The defendant Van Donge was operating a transport truck owned by Ray Ogier, of McCook, Neb. It was a Diamond T three-and-a-half-ton truck; was 31 feet, 9 inches from the front bumper to the back end of the tank; was seven feet wide, and the entire equipment weighed 18 tons. Prior to the accident Van Donge had been proceeding north on highway 81 and had pulled his truck off the highway of the west side and parked it in front of the Donaldson café. There were two rows of trucks parked between Van Donge's truck and the highway. Upon leaving the café Van Donge entered his truck, drove north to the county road running east and west, then turned east toward highway 81. On entering the highway he turned north. At the time of the accident the trailer had not completely straightened out on the highway.

The plaintiff had a contract carrying newspapers from Wichita to Salina, and had a regular schedule that he made each night. On the night of the accident plaintiff left Wichita at 12:37 o'clock a. m., and drove between Wichita and Newton at an average speed of 50 to 55 miles per hour, arriving at the intersection at about 1:20 o'clock a. m.

Plaintiff testified that when he reached a point four or five hundred feet south of the intersection he removed his foot from the ac-

celerator, threw out his clutch and coasted up to the intersection, intending to turn on to a road running northwest into Newton, which joins highway 81 about 200 feet north of the intersection. When he reached a point 150 or 200 feet south of the intersection he saw Van Donge's truck for the first time. It was moving east on the country road. Plaintiff stated he could not see defendant's truck until it was from 1 to 3 feet west of the slab because of the trucks parked along the slab. He was then driving, as he testified, about 40 or 45 miles per hour. The estimates as to the speed of the truck varied from less than 5 miles to 10 or 12 miles per hour. Plaintiff stated he expected the truck to stop, but that it came onto the pavement of the main highway without stopping, proceeded across the center line and turned north, leaving the trailer blocking the west side of the pavement. When the front of the truck was almost to the center line of the pavement and plaintiff saw that it was not going to stop, he immediately applied his brakes. He pushed the brake clear down and held it there. The brakes were in good condition, but the surface of the pavement was covered with sand, preventing him from stopping as soon as he could have under ordinary conditions. All of the tires on plaintiff's car slid. He tried to steer over to the right far enough to go between the truck and the gasoline pumps of the filling station, but was not able to do so. His left front wheel hooked inside the rear wheel of the tractor on Van Donge's truck. After the collision plaintiff's left front fender was about two feet west of the edge of the pavement; the right front wheel was off the slab; the door of the plaintiff's car was even with the south pump of Phillips or Heckerdon station. Plaintiff suffered injuries for which he sues.

Van Donge testified that he came to a complete stop before entering highway 81; that he looked both ways and saw no car approaching from either direction. The weather was clear and the intersection well lighted. He testified that he stopped at a point where his front wheels were possibly two feet west of the pavement. The cab was three to three and a half feet west of where the front wheels stood. He stopped at a point from which, as he testified, he had a "reasonable" vision down the highway. There was no evidence that he ever looked to the south again. He admitted he did not see plaintiff's car until the crash.

The jury gave a general verdict in plaintiff's favor and returned answers to special questions. Many errors are specified.

It is contended that plaintiff's negligence bars his recovery as a matter of law. Defendants contend that plaintiff's testimony as to the speed of his car cannot be believed. The sheriff who investigated the accident testified the plaintiff "skidded one tire 49 yards." The jury found one skid mark extended 49 steps and one skid mark 18 steps south of the point of impact. Defendants assert that "the plaintiff, after skidding his tires a distance of 147 feet, collided with the truck, still going at such a speed that he demolished his car and injured himself." The rule is invoked that where the testimony of a witness is positively contradicted by physical facts, neither the court nor the jury is permitted to give credit to such testimony. (*Chambers v. Skelly Oil Co.*, 87 F. 2d 853.)

The jury found the defendant Charles Van Donge was guilty of negligence which contributed to and was a proximate cause of the accident; that such negligence consisted in his failure to use due precaution when entering the highway. The jury further found the plaintiff was not guilty of any negligence which contributed to the cause of the accident.

We think the question was for the jury. The jury could disregard the testimony as to the skid marks on the pavement if it chose to do so. As there was testimony to support its findings, we cannot say, as a matter of law, that plaintiff's negligence bars his recovery.

Defendants assert plaintiff was guilty of negligence as a matter of law in violating section 32 of chapter 283 of the Laws of 1937, which reads as follows:

"(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing. (b) Where no special hazard exists the following speeds shall be lawful, but any speed in excess of said limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful: (1) Twenty miles per hour in any business district; (2) twenty-five miles per hour in any residence district. (c) The fact that the speed of a vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway condition, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle, or other conveyance or on entering the highway in compliance with legal requirements and the duty of all persons to use due care. . . ."

In support of this contention counsel assert: "The undisputed evidence in this case showed that a speed of 50, 60 or 70 miles an hour at or near the intersection was unreasonable, considering the

conditions then existing." The court instructed the jury that if plaintiff violated the statute he was guilty of negligence, and if such negligence on his part contributed to or was a proximate cause of the accident, the plaintiff could not recover. Commenting on this instruction, defendants assert: "The court recognizes that a violation of the statute was negligence, and although the undisputed evidence showing the statute had been violated by the plaintiff and that the plaintiff was guilty of negligence *per se*, still the court erroneously permitted the jury to decide the question." It is not claimed the instruction was erroneous if applicable to the facts. Starting with the assumption that the undisputed evidence showed that the plaintiff was traveling at an unlawful rate of speed, counsel for defendants argue that "if all the testimony favorable to the plaintiff is accepted as true, that reasonable minds could not reach a conclusion other than that the plaintiff was guilty of negligence which barred his recovery as a matter of law." Hence, defendants argue not only did the court err in giving the instruction, but also in finding the plaintiff was not guilty of any negligence which contributed to and was the proximate cause of the accident.

The contention of defendants cannot be sustained. The testimony of plaintiff, if believed, showed that he had not violated the statute. It was a disputed question of fact. The question of what was a reasonable and proper speed under the circumstances was one for the jury. The question was resolved in favor of the plaintiff. As there was testimony to support this conclusion, we cannot say, as a matter of law, that the jury was wrong in its determinations. (*Keir v. Trager*, 134 Kan. 505, 7 P. 2d 49; *Dobson v. Baxter Chat Co.*, 148 Kan. 750, 85 P. 2d 1.)

Defendants next contend that no specific acts of negligence were found by the jury against the defendant, and that the negligence found was not the proximate cause of the accident. The jury found the defendant Van Donge negligent in "failure to use due precaution when entering highway." It is asserted that this answer on the part of the jury was a mere conclusion. The court gave the following instruction:

"You are instructed that section 52 of chapter 283 of the Laws of Kansas for 1937 provides:

" '(a) The driver of a vehicle shall stop as required by this act at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an

immediate hazard, but said driver having so yielded may proceed, and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right of way to the vehicle so proceeding into or across the through highway.'

" '(b) The driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at one or more entrances thereto, although not a part of a through highway, and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed.'

"In this connection you are instructed that the violation of this statute constitutes negligence of itself."

The abstract fails to disclose that defendants objected to the instruction. It therefore became the law of the case (*Stephenson v. W. R. Grimshaw Co.*, 147 Kan. 532, 77 P. 2d 981; *Thogmartin v. Koppel*, 145 Kan. 347, 65 P. 2d 571).

Under the instruction the jury was entitled to find Van Donge guilty of negligence if it should find that he neglected to look to the south after reaching a point from which he could see vehicles close enough to make his entering the highway dangerous. The jury could also find Van Donge guilty of negligence if he failed to see what was in plain sight.

Van Donge admitted that from the edge of the pavement he could have seen the lights of an approaching car a mile south of the intersection. The plaintiff's evidence was to the same effect. Defendant did not look to the south from that point, however, but testified that he stopped his truck and looked south when his wheels were about two feet west of the pavement. Under his own testimony there was a distance of three or three and a half feet from the wheels to the driver's seat. The evidence was that rows of trucks were parked along the west side of the highway at a distance of three or four feet from the slab. These trucks extended north to within three or four feet south of the intersecting east-west road. There was no evidence that defendant ever looked to the south again. He admitted that he did not see the car until the crash. Plaintiff testified that he first saw the front end of the truck coming out from behind the parked trucks when it was from one to three feet west of the intersection. At this time he was from 150 to 200 feet south of the intersection.

Under this evidence the jury could determine the distance plaintiff was away from the intersection when Van Donge's truck entered

the intersection; how far down the highway Van Donge could see from the place he said he stopped; the truthfulness of Van Donge's testimony that he could see a quarter of a mile down the highway and that plaintiff's car was not in view when Van Donge started into the intersection; whether Van Donge looked south down the highway from a point at which a reasonably prudent man would have looked; whether he ever looked south down the highway at all; whether a reasonably prudent man would not have looked south when he reached the highway from which point Van Donge admittedly could have seen a full mile down the highway; whether defendant Van Donge exercised the care of a reasonably prudent man, whose legal duties were defined in the court's instructions, in entering the highway.

These questions were determined by the jury adversely to the defendants. By its general verdict in favor of plaintiff every controverted fact, not specially found by the jury, and every favorable inference therefrom, was resolved in favor of the plaintiff. In addition, the jury found that plaintiff was not guilty of contributory negligence and that immediately prior to applying his brakes he was traveling at a speed of forty to fifty miles per hour. Since the collision occurred only twenty-five feet north of the intersection, at the speed the jury found plaintiff to have been traveling, certain conclusions were possible—either Van Donge did not look down the highway at all, or from the place he looked he could not see as far as he claimed, because plaintiff's car was much closer than a quarter of a mile away, the distance Van Donge claimed he could see.

Appellants' argument that the negligence found was not the proximate cause of the collision assumes that the jury found that Van Donge did stop and look before entering the intersection, that he could see a quarter of a mile down the highway and that plaintiff's car was not in sight. The jury, however, found none of those facts in accordance with appellant's assumption. The jury's findings were just the opposite of those assumed by appellants.

Neither does the record show that defendants made any request that the findings of the jury as to the negligence of Van Donge be made more definite and specific. Having failed to make such request, they cannot complain of the answer. (*Bagnall v. Hunt*, 131 Kan. 805, 293 Pac. 733; *Antrim v. Speer*, 133 Kan. 297, 299 Pac. 643.)

It is claimed the verdict is the result of passion and prejudice on the part of the jury and that a new trial should be granted. The verdict was for $6,474.50. Taking into consideration the severe injuries sustained by the plaintiff, the damage done to the automobile, medical and hospital expense, loss of time from work, etc., we are unable to say the verdict was excessive or was the result of passion and prejudice.

Defendants specify as error the action of the trial court in overruling the demurrer of the Central Surety and Insurance Corporation to the plaintiff's evidence.

It is conceded that under our statute G. S. 1935, 66-1,128, and our decisions (*Dunn v. Jones,* 143 Kan. 219, 53 P. 2d 918; *Twichell v. Hetzell,* 145 Kan. 139, 64 P. 2d 557) an insurance company issuing a policy of insurance in compliance with the statute may be joined as a defendant in an action by an injured third party. It is contended, however, that the demurrer of the defendant insurance company to plaintiff's evidence should have been sustained because the policy of insurance was neither attached to the petition nor offered in evidence; that no evidence was introduced to show the terms of the alleged policy, or to show that it had been filed with or accepted by the corporation commission. It is further asserted that if the policy was issued, no evidence was offered to show the policy covered this particular owner or any damage caused by this particular truck insofar as this accident is concerned.

The answer of the insurance company was a general denial followed by these admissions:

"Defendant admits that it issued a policy of liability insurance to Ray Ogier covering a 1937 Diamond T transport truck and that said policy was in effect on July 13, 1937.

"Defendant admits that on or about the 13th day of July, 1937, an accident occurred on U. S. highway No. 81, one mile south of the city of Newton, Kan., involving a transport truck owned by Ray Ogier and a car being driven by this plaintiff, but said answering defendant further pleading specifically denies that said accident was the result of the negligence of the said Ray Ogier or the said defendant Charles Van Donge."

The defendant in its answer further alleged that the defendant Charles Van Donge was operating his truck on the highway in a careful manner; that if the plaintiff was injured, such injuries were the result of plaintiff's own negligence, and enumerates seven specific acts of negligence; that such acts of negligence constituted contributory negligence barring his right of recovery. The answer further alleged:

"Defendant pleading, further alleges that the plaintiff's petition fails to state a cause of action against this defendant and that under the terms of said insurance policy issued by this defendant to the said Ray Ogier this action on the part of the plaintiff is prematurely brought."

The petition alleged:

"On or about July 13, 1937, the said Ray Ogier owned and was operating on the highways of the state of Kansas a 1937 Diamond T transport truck, which truck was being used by the said Ray Ogier to transport gasoline, and on such day the said truck was under the control of and being driven by the defendant, Charles Van Donge. On said date said truck was being operated under permit No. F-1454, issued by the state corporation commission of the state of Kansas, to transport gasoline upon the public highways as a private motor carrier of property, pursuant to law. As a condition and a prerequisite to the granting of said permit the said Ray Ogier was required by statute to and did file with the state corporation commission of the state of Kansas, a policy of liability insurance, issued by the defendant, the Central Surety and Insurance Corporation of Kansas City, Mo., to the said Ray Ogier, covering the aforesaid 1937 Diamond T transport truck, said policy of insurance being No. PT-5751. Said policy of insurance was approved by the state corporation commission of the state of Kansas, and was in full force and effect on July 13, 1937. A copy of said policy is not attached to this petition for the reason that the defendants are familiar with the provisions thereof. The plaintiff alleges that the defendant, the Central Surety and Insurance Corporation of Kansas City, Mo., had notice of the collision and injuries hereinafter described but has refused to compensate the plaintiff for his injuries suffered due to the negligent operation by the defendant, Charles Van Donge, of the aforesaid transport truck owned by the said Ray Ogier."

It was thus alleged that the defendant insurance company issued to Ray Ogier, the employer of Van Donge, a policy of liability insurance covering a 1937 Diamond T transport truck, which the petition alleges was involved in a collision with plaintiff's car, and that the state corporation commission had issued permit No. F-1454 covering the operation of the truck as a gasoline transport. Ordinarily by "issue" of an insurance policy is meant its delivery and acceptance whereby it comes into full force and effect as a binding obligation. (*Coleman v. New Eng. Mutual Life Ins. Co.,* 236 Mass. 552, 129 N. E. 288; *Homestead Ins. Co. v. Ison,* 110 Va. 18, 65 S. E. 463; 32 C. J. 1123.)

Our statute, G. S. 1935, 60-729, provides that "In all actions, allegations of the execution of written instruments and endorsements thereon, . . . shall be taken as true unless the denial of the same be verified by the affidavit of the party, his agent or attorney."

The answer of the defendant was not verified.

The petition was not attacked by a demurrer or motion to make definite and certain, neither was a motion made to attach a copy of the policy sued on. The execution and issuance of the policy is thus admitted, and we must look to the pleadings and the statute (see *Dunn v. Jones,* supra) for the integrated insurance contract. Our statutes (G. S. 1935, 66-1,128, 66-1305, subdiv. *d*) are written into the policy.

The court instructed the jury:

"You are further instructed that before you can find against either the defendant insurance company or Van Donge, the driver of the truck, it will have to be shown that Van Donge was negligent and that his negligence was the proximate cause of the collision.

"In other words, before the defendant insurance company can be held liable, it will have to be shown that the defendant Van Donge was responsible for the collision.

"In this connection, you are instructed that if you find against either defendant, your verdict shall be against both defendants."

No objection was made to this instruction.

The petition alleged a policy of liability insurance was issued by the defendant insurance company. This was not denied by a verified answer; on the contrary, was expressly admitted by the answer of the insurance company. The court instructed the jury as to the liability of the defendant insurance company under the policy, and no objection was suggested. Under this posture of the case, can it seriously be contended there was a misjoinder or that the demurrer of the defendant insurance company to the evidence should be sustained? We think not. This court has held that a question of misjoinder cannot be raised by a demurrer to the evidence. (*Minch v. Winters,* 122 Kan. 533, 253 Pac. 578.) In *State Bank of Stella v. Moritz,* 146 Kan. 23, 69 P. 2d 15, it was said that questions not timely raised in the trial court are not reviewable on appeal. The court did not err in overruling the demurrer to the evidence.

Finding no error in the record, the judgment must be affirmed. It is so ordered.