LA PATTI CORPORATION v. PACIFIC NAT. FIRE INS. CO.

No. 5030.

District Court, E. D. Missouri, E. D.

Jan. 30, 1947.

208

Francis R. Stout, of St. Louis, Mo., for plaintiff.

Willson, Cunningham & McClellan and J. H. Cunningham, Jr., all of St. Louis, Mo., for defendant.

HULEN, District Judge.

We are now presented with defendant's motion to "quash the return on the writ of summons" issued by the Circuit Court of the City of St. Louis. The case is here on removal from the State court. The record contains facts bearing upon the issue presented that are not in dispute.

Plaintiff, a corporation organized under the laws of the State of Tennessee, is not licensed to do business in Missouri. Defendant, organized under the laws of California, is licensed to do business in Missouri as a foreign insurance corporation. It has complied with Section 6005, R.S.Mo. 1939, Mo.R.S.A., which provides for process against non-resident insurance corporations.

Plaintiff is a subsidiary of Nusrala-Bowen Shoe Company, a Missouri corporation with offices in the City of St. Louis. Shortly prior to issuance of the policy of fire insurance upon which plaintiff brought this case, Nusrala-Bowen's auditor called upon the Insurers Service Corporation at its office in St. Louis, to take from a policy which had been issued to it by Insurers Service Corporation, coverage on a stock of shoes at Nashville, Tennessee, and insure the shoes in the name of plaintiff. There is no evidence that terms of the policy were discussed, as asserted in defendant's brief, assuming that is what is meant by the words "filled out * * * exact forms * * * desired by plaintiff". The change was occasioned by organization of plaintiff corporation to take over the shoe business at Nashville. Insurers Service Corporation, on October 23, 1945, wrote to defendant as follows: "As of November 1st, please effect fire-extended coverages and sprinkler leakage insurance in accordance with the attached forms" (referring to the coverage of plaintiff's stock of shoes at Nashville). Insurers Service Corporation delivered the policy to plaintiff in St. Louis and collected the premium. The policy bears a sticker reading "Insurers Serv-

ice Corporation, 320 N. 4th Street, St. Louis".

The President of Insurers Service Corporation testified it was defendant's licensed agent for the State of Missouri; that they could execute policies on property in Missouri for defendant but on property outside Missouri they sent the application to the home office—which was the general practice of handling such business. He recalled receiving the order for the policy from plaintiff in St. Louis, that they received the policy in suit in St. Louis, delivered it in St. Louis, collected the premium on the policy in St. Louis and received a portion of the commission on the policy. In an effort to show that the Insurers Service Corporation was not defendant's agent, defendant developed through Mr. Werner that it was the business of the Insurers Service Corporation to advise clients on their insurance needs and that in some cases they advised a client to carry his own insurance, in others they advised them to take insurance in mutual companies. On Missouri property under their agency contracts they wrote the insurance. As to the policy in suit, it was handled "as any other insurance agency in Missouri would have done".

The policy is dated November 1, 1945. A letter from the defendant to Insurers Service Corporation dated June 11, 1945 contains the following paragraph: "Incidentally, I would like to ask that you make a change in your procedure when asking that we write out-of-state brokerage business. Your telegrams have read as binders and it's not only company policy but a limitation in your agency contract that you can not bind out-of-state business. I'd appreciate it if you would so word your wires or letters to indicate that you are asking for a binder or authorization, and I assure you that we will give you exactly the same service."

■ Decision on motion to quash the return on writ of summons turns on interpretation of Section 6005, R.S.Mo.1939, Mo.R.S.A.*, and particularly the meaning of the term "issue" contained in the statute. If the policy was issued in Missouri, service is good. If the policy was issued in Tennessee, service is not good. Plaintiff insists the policy was issued in Missouri—defendant the contrary. The parties agree there is no question of venue involved. Section 6005 is purely a service statute. Johnston v. Progressive Life Ins. Co., Mo.App., 192 S.W.2d 649.

■ The place of issuance of the policy sued on under the facts presented involves decision whether Insurers Service Corporation was agent of plaintiff or defendant in the transaction which resulted in delivery of the policy. Plaintiff asserts Insurers Service Corporation was defendant's agent. Defendant denies the agency. Agency is a question of fact. Luthy v. Northwestern Nat. Ins. Co., 224 Mo.App. 371, 20 S.W.2d 299.

■ Defendant concedes Insurers Service Corporation was licensed by the State of Missouri as agent of defendant to write policies on Missouri property. We find on the record presented, Insurers Service Corporation's agency for defendant was not restricted to Missouri business. Prior to June 11, 1945, Insurers Service Corporation as defendant's agent had been issuing "binder" on "out-of-state brokerage business" like the policy in suit. Only an authorized agent could do that. We believe a fair deduction of the letter of June 11, 1945, is not that it revoked the agency, but simply called the agent's attention to a "restriction" in his agency agreement on

* "Sec. 6005. *Process against foreign companies—appointment of superintendent to receive or accept service of.* No insurance company * * * not incorporated * * * under the laws of this state shall directly or indirectly issue policies [etc.] * * * in this state, until it shall have first executed an irrevocable power of attorney in writing, appointing and authorizing the superintendent of insurance of this state, to acknowledge or receive service of all lawful process, for and on behalf of such company, in any action against said company, * * * service as aforesaid shall be valid and binding * * * *in all actions brought by nonresidents of this state upon any policy issued in this state* in which such nonresident is named beneficiary or which has been assigned to such nonresident * * *." (Emphasis by the Court.)

out-of-state business. The letter directs the Insurers Service Corporation to "make a change in your procedure" on out-of-state business. After calling attention to the practice of the agent in issuing "binders" on out-of-state business, defendant informs the agent that it is a "limitation in your agency contract that *you can not bind out-of-state business*"—not that the agent cannot act as defendant's agent in securing out-of-state business. We can find nothing in this letter indicating even a desire by defendant to sever the authority to represent the defendant. Defendant was instructing its agent in "procedure" in carrying on defendant's business. Defendant required that its business be transacted in a particular way. But at the conclusion of the letter defendant tells the agent if he follows defendant's direction "we will give you *exactly* the same service" as when the agent issued the binders. Agency is a matter of agreement and the parties can agree, expressly or impliedly, on the extent of the agent's authority and how the principal's work shall be performed. 32 C.J. § 145, p. 1067; 26 C.J. § 361, p. 289; 44 C.J.S., Insurance, § 152, p. 824. The letter to defendant from Insurers Service Corporation of October 23 ordering the policy sued on was in accord with procedure dictated by defendant in letter of June 11th. This letter, after referring to plaintiff and its Nashville place of business, reads: "As of November 1st, please effect fire-extended coverages and sprinkler leakage insurance in accordance with the attached forms". Doubtless there was previous understanding between defendant and Insurers Service Corporation as to the "attached forms". The letter assumes they are in accord with defendant's way of doing business, that it will be accepted and the policy issued. The letter is not an offer of insurance to defendant in the sense of a broker soliciting insurance for a client.

■ Insurers Service Corporation received the order or application for the policy in St. Louis. At that time the auditor returned to Insurers Service Corporation the blanket policy that had been issued to Nusrala-Bowen on February 1, 1946, with instructions that the Nashville, Tennessee,

property be eliminated and a new policy be written insuring the Nashville property in the name of plaintiff. The transaction up to this point in its entirety took place in Missouri. After defendant had prepared the policy it was sent to Insurers Service Corporation in St. Louis. Up to this time there is no evidence that plaintiff had accepted the policy. While there are circumstances where an insurance company may become liable on a policy of fire insurance before it is delivered to the insured, with such cases we are not now concerned. There are terms in the policy which we do not hold decisive of the question under consideration, but which indicate delivery to the insured was necessary for the policy to become binding on plaintiff. The policy provides "It is further understood and agreed that Endorsement No. 2 and No. 209 is made a part of this policy". Endorsement No. 209 is a watchman's clause. The other does not appear on the policy. How could plaintiff "agree" to these endorsements until it received the policy and read the endorsements? All parties concede that plaintiff had the right to reject the policy on its delivery. On the record we conclude Insurers Service Corporation was defendant's agent in the transaction which concluded with delivery of the policy to plaintiff and that *all of the transactions between plaintiff and defendant on issuance of the policy took place in Missouri.*

■ Under the circumstances was the policy of insurance "issued" in Missouri as that term is used in Section 6005, R.S.Mo. 1939, Mo.R.S.A.? Section 6005 is an amendment of Section 5894, R.S.Mo.1929. Counsel have not directed the Court to any Missouri case and we have found none which passes specifically on the meaning of the term "issued". The cases assume "issuance" based on facts surrounding delivery of the policy without in so many words saying that such facts constitute "issuance" of a policy. Facts showing issuance of an insurance policy as the term was used in the old statute will be found in some of the cases decided under that statute and which we think throw light on the intention of the legislature in using that term in the 1939 Act, now Section 6005. "The problem of statutory construction is to find the

legislative intent". Sternberg Dredging Company v. Walling, 8 Cir., 158 F.2d 678.

■ The last case to pass upon the repealed statute was State ex rel. Phœnix Mut. Life Ins. Co. of Hartford, Conn., v. Harris, 343 Mo. 252, 121 S.W.2d 141, 119 A.L.R. 862. The Court reviews a long line of decisions in the Harris case and reaches the conclusion that a non-resident can maintain a suit in Missouri against a foreign insurance corporation on condition, (1) the policy was issued in Missouri, and (2) the policy was outstanding in Missouri at the time of suit. The Harris opinion discusses at length the case of State ex rel. American Cent. Life Ins. Co. v. Landwehr, 318 Mo. 181, 300 S.W. 294, and in the sense that the American Central Life Insurance Company case was subject to the interpretation as not requiring in a suit by a non-resident against a foreign corporation that the policy be outstanding in Missouri at the time of suit, the Court overruled the American Central Life Insurance Company case.

Two things we believe are noteworthy in the Harris opinion as bearing upon the meaning to be given the word "issue" as used in the 1939 law (Section 6005) governing the right of a non-resident to sue a foreign insurance company in the State of Missouri. In the Harris case the insurance company was a foreign corporation. Plaintiff was a non-resident. The policies were "issued in Missouri" in that the application for insurance was taken, the policies were delivered, and first premiums were paid in Missouri. All transactions with the insured were performed in Missouri. Bearing upon the meaning of the term "issue" we observe that in the Harris case, referring to issuance of the policy, the Court comments, 121 S.W.2d loc. cit. 145: "But certain it is that the *statute requires all suits and proceedings in this state to be based upon business transacted in Missouri, while the company was operating here under license."* (Emphasis added)

Referring to the American Central case, the Harris opinion states, 121 S.W.2d loc. cit. 144: "Speaking of the effect of this latter provision, the American Central opinion said it intrinsically evidenced a legislative intent that the statute *'should be for the benefit of those persons doing business with such companies in this state'*". (Emphasis added)

The Court further says in the Harris case, 121 S.W.2d loc. cit. 143: "* * * All actions under the statute must have been based on a policy or liability *issued or contracted in Missouri while the company was doing business here".* Emphasis added.

It is our opinion that the purport of the Harris case is that when a foreign insurance company uses the State of Missouri as the scene for maintaining a licensed agent, receiving application or order for an insurance policy, delivering the policy and collecting the premium, then Missouri becomes the place of *issuance* of the policy; the statute (Section 5894) is "For the benefit of those persons doing business with such companies in this state" and suit based upon such a policy is "Based upon business transacted in Missouri, while the company was operating here under license". Should defendant be heard to complain on this construction of the statute and the word "issue" as unreasonable in that it is required to bring its witness here from a distant state—plaintiff must do likewise. For the state to adopt a policy which permits a foreign insurance company to come into the state and use its facilities, including licensing of agents, to transact all business in connection with the insurance and delivery of the policy, including risk on property in another state, and which when loss occurs and liability on the policy follows permits the insurance company to be sued in the state where it sold the policy and transacted all the business with the insured in connection with its issuance, does not in our opinion impose hardship on the foreign insurance company or violate any rights of the company.

So much for meaning of "issuance" under the old law. Now for the second point bearing upon the interpretation of the 1939 statute: The Harris case suggested the present law. We quote from the concluding part of the opinion, 121 S.W.2d loc. cit. 147: "Section 5894 is exceedingly obscure. This is the fourth time it has been construed by this court en banc and on each occasion great difficulty has been experi-

enced in interpreting it. * * * The General Assembly of this state will convene in a few months. * * * If the legislature see fit to clarify it they may do so."

The Harris opinion was delivered October 29, 1938. Following the Harris opinion the 1939 legislature passed what is now Section 6005 (approved May 29, 1939). With the Harris opinion and other decisions of the appellate courts in Missouri before them as to the meaning accorded the word "issue" in previous service statutes, the legislature again uses the same term. But we observed, while the Harris case held that under Section 5894 in order for a non-resident to maintain a suit in Missouri under the service statute (1) the policy must be issued in Missouri by a company licensed to do business in Missouri, and (2) *the policy must be outstanding in Missouri when the suit is brought,* the 1939 law dropped the second requirement in line with the American Central decision, requiring only that the policy be "Issued in this state".

The Missouri cases do not indicate a strict construction of Section 6005 is called for. State ex rel. Northwestern Mut. Fire Ass'n v. Cook, 349 Mo. 225, 160 S.W.2d 687.

To hold that the record in this case shows facts constituting *issuance* of the insurance policy in the State of Missouri would be supported by authorities. In State ex rel. Modern Woodmen of America v. Wilcox, 229 Mo.App. 988, 84 S.W.2d 678, 679, 681, the converse was held: "We conclude, therefore, that a citizen of another state, suing on a benefit certificate *where the business was entirely transacted in said other state,* cannot secure service on a mutual benefit association that has complied with the provisions of section 6006 supra, by serving process upon the superintendent of insurance of this state."

The Western District of Missouri held, in Harrison v. Hartford Fire Ins. Co. of Hartford, Conn., D.C., 55 F.Supp. 241, 242, that "This provision [section 6006] was inserted so as to make insurance companies doing business in this state subject to the service of process where a nonresident assignee of the benefits under a policy issued in this state brought suit."

The Supreme Court of Missouri, in Crabtree v. Ætna Life Ins. Co., 341 Mo. 1173, 111 S.W.2d 103, loc. cit. 108, said: "* * * Section 5894 does not authorize service thereunder on causes of action accruing in and instituted by citizens of another state on policies issued or *business transacted in foreign states,* * * *." (Emphasis added.)

Service on summons was quashed in Thompson v. National Life Ins. Co. of America, D.C., W.D.Mo., 28 F.2d 877, where "The policy sued on was issued in the state of Kansas and *all business in respect thereof transacted there."*

In Knights Templar & Masons' Life Indemnity Co. v. Berry, 50 F. 511, 513, the Eighth Circuit ruled, where the insurance company was an Illinois corporation engaged in soliciting business in Missouri, having an agent there for that purpose, and solicited, received the application for and delivered the policy in Missouri, that "Under these circumstances, it cannot be successfully maintained that the contract was made in Illinois. In its inception and completion it was made in Missouri, * * *."

It was ruled in Campbell v. Business Men's Assur. Co., D.C., W.D.Mo., 31 F.2d 571, 573, that "The policy involved in this action, having been received and accepted in the state of Illinois must be treated as an Illinois contract."

In Hoffman v. North American Union, Mo.App., 56 S.W.2d 599, loc. cit. 601, the Court said: "In the case at bar, it being admitted that the deceased was a resident of Missouri, that the certificate or policy in question was delivered to him in this state, that the premiums thereon were all paid within this state, we are of the opinion that the laws of Missouri apply to and govern the contract of insurance herein."

The Supreme Court of Massachusetts, in Coleman v. New England Mutual Life Ins. Co., 236 Mass. 552, 129 N.E. 288, loc. cit. 289, held: "Ordinarily by the 'issue' of an insurance policy is meant its delivery and acceptance whereby it comes into full effect and operation as a binding mutual obligation. Homestead [Fire] Ins. Co. v. Ison, 110 Va. 18, 23, 65 S.E. 463; Logsdon v.

Supreme Lodge, etc., 34 Wash. 666, 76 P. 292."

It was decided in Douglass v. Mutual Benefit Health & Accident Ass'n, 42 N.M. 190, 76 P.2d 453, loc. cit. 465: "Ordinarily, by 'the issue of an insurance contract' is meant its preparation, execution, and delivery as a binding obligation. Coleman v. New England Mut. Life Ins. Co., 236 Mass. 552, 129 N.E. 288."

See 44 C.J.S., Insurance, § 262, p. 1048 on Issuance of Policy. "The words 'issue,' 'issuance,' and 'issued,' in reference to an insurance policy, are used in different senses, sometimes as meaning the preparation and signing of the instrument by the officers of the company, as distinguished from its delivery to insured, and sometimes as meaning its delivery and acceptance whereby it comes into full effect and operation as a binding mutual obligation."

Also, 33 C.J. "Issue" Sec. 17 on As Applied to Insurance Policies. "As applied to insurance policies, the meaning of the term 'issue' is to be determined by the relation in which it is employed. In its full technical sense, it usually includes delivery and acceptance."

And, 12 Appleman, Insurance Law & Practice, § 7083, p. 129—Place of Delivery.

"It frequently has been stated that the law of the place of delivery should control insurance policies. * * * The mailing of a policy is sufficient to constitute delivery, where the policy provides that it shall take effect at the residence of the insured. The sending of such policy to the insurer's local agent for delivery to the insured makes the location of such agent the place of delivery. And the delivery to the insured in the state by the broker acting for the insured and as agent for the insurer makes the law of that state control.

"The law of the state where the policies are delivered governs matters bearing on the capacity, execution, interpretation and validity of the policies. * * *"

The point was made in oral argument that actual delivery of the policy was not necessary to the consummation of the contract. This is true under certain circumstances. In this case, however, the suit is on a policy of insurance and not for a contract for a policy of insurance. Plaintiff had no knowledge defendant had issued the policy until it was delivered to him. Under these circumstances we think the ruling of the Supreme Court of Missouri in Horton v. New York Life Ins. Co., 151 Mo. 604, 52 S.W. 356, loc. cit. 360, has application: "Actual delivery of the policy was not essential to the consummation of the contract, if the company had chosen to signify to the insured by other means that his application was accepted. But the company did not choose to do so. The first intimation that the insured had that his application was accepted was the delivery to him of the policy."

We have found no Missouri case holding, where a foreign insurance corporation maintained a licensed agent in Missouri and that agent received an application or order for insurance in Missouri, delivered and collected the premium on the policy in Missouri, and transacted all business between the insurance company and the insured in Missouri, that the policy was not considered issued in Missouri regardless of where the physical writing of the policy took place.

We conclude under the facts in this case, defendant, being a foreign insurance company licensed to do business in Missouri, having transacted with plaintiff in the State of Missouri all the business of receiving the application for the policy through its agent and delivery and collection of the premium, that such facts show *issuance* of the policy in Missouri within the terms of the law, and service under Section 6005 is good.

### Order

Motion of the defendant to quash sheriff's return on writ of summons and writ of summons is overruled.