**UNIVERSAL FILM EXCHANGES, INC., Appellee,**

**v.**

**Bernard LUST, trading as Sydney Lust Theatres, and Independent Theatres, Inc., Appellant.**

**No. 72-2466.**

United States Court of Appeals, Fourth Circuit.

Argued April 2, 1973.

Decided June 11, 1973.

Robert E. Sher, Washington, D. C. (Robert E. Sharkey, Baltimore, Md., on brief), for appellant.

J. Cookman Boyd, Jr., Baltimore, Md. (Rob Ross Hendrickson, Baltimore, Md., on brief) for appellee.

Before SOBELOFF, Senior Circuit Judge, and FIELD and WIDENER, Circuit Judges.

SOBELOFF, Senior Circuit Judge:

The question presented in this appeal is whether the District Court properly denied a Rule 60(b)(1), F.R.Civ.P., motion to vacate a summary judgment entered against the appellant, Independent Theatres, Inc. Rule 60(b)(1) reads, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect * * *.

Appellant's attorney contends that although his manner of advocacy in this case well might be termed negligent, it nonetheless should be treated as excusable neglect. To do otherwise, he argues, would impose upon his client a $25,000 judgment on a claim to which he insists there is a meritorious defense.

The issue thus posed presents us with a serious dilemma. The more Boeotian and flagrant we deem counsel's conduct in the case, the greater is his professional negligence; correspondingly, the behavior becomes less "excusable" under Rule 60(b)(1). On the other hand, the more indefensible the attorney's behavior, the greater is one's natural sympathy for the ultimate victim—the client. Yet the rule is quite specific and unless there is found mistake, inadvertence, surprise or excusable neglect, relief cannot be granted regardless of our sympathies.

### Factual Background

This litigation arose out of the alleged failure of Independent Theatres, Inc., a booking agent of films, to pay Universal Film Exchanges, Inc., a distributor of films, for the rental of films procured by it for Sydney Lust Theatres, a small movie house chain. The original complaint filed in the District Court for the District of Maryland named both Bernard Lust, trading as Sydney Lust Theatres, and Independent as defendants.

Stanley Frosh, Lust's attorney, filed answers to the complaint and interrogatories for *both* defendants. The answers denied that Lust had exhibited Universal films, denied that Independent had entered into any contracts with Universal for the exhibition of motion pictures and denied that either defendant owed any sum of money to the plaintiff.

Independent's contention in its 60(b)(1) application diametrically contradicts the answer filed on its behalf. We are now told that Independent had entered into a contract with Lust whereby it agreed to obtain films for Lust but was to undertake no personal obligation to pay any rental fees for the films—monetary responsibility would rest with Lust. This information was relayed in a letter to a group of film distributors, including Universal, on Independent stationery over the signature of Bernard Lust. Thus, Independent now claims that any unpaid bills resulting from films rented by it for Lust Theatres are the sole obligation of the theatre management.

The potential conflict of interest between the two defendants was recognized early in the litigation by Harley Davidson, Independent's president. As a consequence, he retained Robert E. Sher, an attorney, to provide his corporation with separate representation and counsel.

Initially, Sher contacted Universal's attorney and explained his client's position—that Lust alone was liable for any unpaid film rentals. After an exchange of correspondence. Universal's attorney wrote the following to Sher on December 7, 1971:

> * * * In the light of obvious confusion arising out of the formal appearance and pleadings filed in behalf of both defendants by Stanley Frosh, Esquire, under date of November 22nd, containing a denial that either defendant is indebted to our client in any amount (Mr. Frosh having told us by phone yesterday that he was unaware of the assumption of responsibility by the defendant Lust), we must defer consideration of any change in parties until promised clarification is received.

> Perhaps you have been, or will be, in touch with Mr. Frosh, but in any event, please understand that we have no desire even to appear uncoopera-tive. When the posture of Mr. Lust becomes more clear, it may very well be that we can accede to your request.

Mr. Sher now tells the court that on the basis of this message he assumed that Universal would work things out with Lust and that he could remain a passive bystander. We agree with counsel for the appellee that the letter meant what it said, namely, that it was the obligation of attorneys Sher and Frosh to clear up the matter.

Sher also contacted Frosh, who allegedly assured him that Independent had nothing to fear since Lust would pay the debt in the near future and the matter "in all likelihood" would never come to trial. Additionally, Frosh is said to have promised to keep Sher abreast of all developments in the case. Relying on these assurances, Mr. Sher tells us, he deliberately chose not to enter an appearance, chose not to file an answer that would have made known to the court his client's defense, and allowed Frosh to continue on as Independent's sole counsel of record. He followed this course of action with full knowledge that service of motions and documents and notice of the entry of orders and judgments are given only to a party's attorney of record. *See* Rules 5(b) and 77(d), Federal Rules of Civil Procedure.

Months passed and Sher heard from no one. Nonetheless, he continued heedlessly to assume that all was well. It was not. Universal's attorneys filed motions for summary judgment against both defendants and a hearing date of April 7, 1972, was set. Notice was sent to Frosh—the only counsel of record for both defendants. Frosh failed to appear at the hearing, sending instead to Universal's counsel the following letter, which although dated April 6, 1972, did not reach counsel's office until April 10, three days after summary judgment had been granted:

> I am sorry for the long hiatus in our correspondence. I am not opposing your motion for summary judg-

ment and you may so advise the Court on the hearing this week.

In the absence of a contesting party, Judge Northrop signed two orders granting summary judgment, one against Bernard Lust and the other against Independent, each for approximately $25,000. Notice and copies of the judgments were sent Frosh as the attorney for both defendants. However, Frosh never informed either his putative client, Independent, or Sher of the judgments. It was not until July 11 that Sher learned of the entry of summary judgment against his client and filed a motion for relief from the judgment.

A hearing was held by Judge Northrop on September 22, 1972, and all parties were heard, including Sher and Frosh. Judge Northrop then held that notice of the motion and entry of the summary judgment were properly served on the only attorney who had entered an appearance for Independent. He further held that the facts presented to him did not constitute mistake, inadvertence, surprise or excusable neglect—the grounds for granting a Rule 60(b)(1) motion. This appeal followed and is limited to the single narrow question: Did the District Court abuse its discretion in denying appellant's motion for relief due to mistake, inadvertence, surprise or excusable neglect pursuant to Rule 60(b)(1)? We hold that it did not.

### Standard To Be Applied

When a Rule 60(b)(1) motion is made, the District Court denies or grants relief based on its discretionary appraisal of the particular facts of the case. The appellant, however, contends that where a movant possesses a meritorious defense, doubt, if any, should be resolved in favor of granting the motion to set aside the judgment in order to

permit the case to be resolved on its merits. *See, e. g.,* Tolson v. Hodge, 411 F.2d 123 (4 Cir. 1969); Tozer v. Charles A. Krause Milling Co., 189 F.2d 242 (3 Cir. 1951).[1] We do not disagree with this statement as a general proposition of law. But the cases do not imply nor should they be read to imply that a District Court will or should always grant relief from a default or summary judgment at the behest of a Rule 60(b)(1) movant.

It is not enough for the moving party to argue that a meritorious defense could now be presented. The proper standard governing these cases is one that is in the conjunctive, not the disjunctive. To prevail, the Rule 60(b)(1) movant must demonstrate that he has a meritorious defense *and* that arguably one of the four conditions for relief applies—mistake, inadvertence, surprise or excusable neglect.

### Standard Applied

We agree with the District Court that Mr. Sher's reliance on other parties to the action to keep him informed as to the progress of the case and Sher's deliberate decision not to enter an appearance or file an answer enumerating his client's defenses were "grossly negligent" and cannot be deemed excusable neglect under Rule 60(b)(1). In this court appellant's counsel has sought to evoke sympathy for his client, Independent; but, unfortunately for Independent, under our adversarial system of justice, the client must pay, at least initially, the penalty of his counsel's neglect. The Supreme Court has said in upholding a District Court's dismissal of an action for the failure of plaintiff's attorney to appear at a pretrial conference after other instances of dilatory behavior:

There is certainly no merit to the contention that dismissal of petition-

---

1. It is worth noting that all the cases cited by the appellant as examples of error in refusing to grant a Rule 60(b)

(1) motion involved default judgments, which are not, as are summary judgments, decisions on the merits.

er's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney." Smith v. Ayer, 101 U. S. 320, 326, 25 L.Ed. 955.

Link v. Wabash Railroad Co., 370 U.S. 626, 633–634, 82 S.Ct. 1386, 1390, 8 L.Ed. 2d 734 (1962).

The Ninth Circuit employed a similar rationale when it refused to set aside a summary judgment pursuant to a Rule 60(b)(1) motion. In that case the attorney did not appear or prepare for a hearing because of his vacation. *See* Smith v. Stone, 308 F.2d 15 (9 Cir. 1962).

Our decision does not leave a client without remedy against the negligent attorney. Lawyers are not a breed apart. Where damages are inflicted upon innocent clients by other professionals, such as doctors or dentists, the remedy is a suit for malpractice. The same is true where damage is inflicted upon a client through an attorney's professional negligence. Indeed, the Supreme Court explicitly pointed out in *Link, supra,* 370 U.S. 626, 82 S.Ct. 1386 at n. 10, that if the attorney's conduct was substantially below what was reasonable under the circumstances, the client's remedy was a suit for malpractice. *See also* Schwarz v. United States, 384 F.2d 833 (2 Cir. 1967).

Accordingly, the judgment of the District Court is hereby affirmed; and it is further ordered that the Clerk send a copy of this opinion directly to Mr. Harley Davidson, President of Independent Theatres, Inc.

Affirmed.