871 F.2d 466
 14 Fed.R.Serv.3d 307
 Edna L. EVANS, Plaintiff-Appellee,
v.
UNITED LIFE & ACCIDENT INSURANCE COMPANY, a New Hampshire
Corporation, Defendant-Appellant.
Edna L. EVANS, Plaintiff-Appellant,
v.
UNITED LIFE & ACCIDENT INSURANCE COMPANY, a New Hampshire
Corporation, Defendant-Appellee.
 Nos. 88-3910, 88-3936.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 1, 1988.
Decided March 23, 1989.
 
 John Y. Pearson, Jr. (Bruce T. Bishop, James C. Howell, Jill M. Mayo, Willcox & Savage, P.C., Norfolk, Va., on brief), for defendant-appellant.
 Philip Browder Morris, Ann Adams Webster (William J.G. Barnes, Browder, Russell, Morris and Butcher, P.C., Richmond, Va., on brief), for plaintiff-appellee.
 Before ERVIN, Chief Judge, HALL, Circuit Judge, and KNAPP, Senior Judge for the Southern District of West Virginia, sitting by designation.
 ERVIN, Circuit Judge:
 
 
 1
 The United States Life & Accident Insurance Company ("United") appeals from the denial of its motions to alter judgment, for a judgment n.o.v., or for a new trial. United submitted its motions after a jury returned a special verdict in favor of Edna L. Evans ("Mrs. Evans"), the beneficiary under a life insurance policy United issued to her husband. United argues, in effect, that there was insufficient evidence to sustain the verdict. Mrs. Evans, in her cross appeal, challenges the district court's admission of an insurance application containing information damaging to Mrs. Evans's claim for benefits. Mrs. Evans also appeals the district court's refusal to amend judgment to increase her interest award. We reverse and remand for entry of a $500,000.00 judgment in favor of Mrs. Evans, based on our conclusion that the district court erred in admitting the insurance application.
 
 I.
 
 2
 Volunteer State Life Insurance Company ("Volunteer") and United are wholly-owned subsidiaries of Chubb LifeAmerica ("Chubb"). James Brisco is an agent for both Volunteer and United. The practices Volunteer and United followed in marketing and issuing life insurance policies, and the statements Brisco made to sell the policy under which Mrs. Evans claims, are the essential background to our decision.
 
 
 3
 In the summer of 1985, Brisco visited Dr. William N. Evans, a 54-year old radiologist, and Mrs. Evans at the couple's Tazewell, Virginia home. Dr. Evans then held a $500,000.00 life insurance policy issued by Phoenix Mutual Life Insurance Company through another agent. Brisco told Dr. Evans that Volunteer or United could provide the same coverage at a lower, more stable premium. Dr. Evans accordingly completed and signed a Volunteer life insurance application.
 
 
 4
 The Volunteer application stated that misrepresentations about one's age or sex would prompt Volunteer to prorate death benefits to what the insurer would have approved had it known the truth. The application did not specifically address the consequences of other sorts of misrepresentations, but declared that "any false statements or misrepresentations may result in the loss of coverage under the policy."
 
 
 5
 Apparently responding to a question from the Evans', Brisco expanded on Volunteer's policy concerning misrepresentations by insurance applicants. Brisco said that Volunteer treated misrepresentations that an applicant was a nonsmoker (smokers' misrepresentations) as it did misrepresentations about age or sex, that is, by prorating death benefits. Dr. Evans then proceeded falsely to state that he had not used tobacco in any form in the past twelve months.[1] Dr. Evans died on March 19, 1986, from complications after a fall down a flight of stairs. Neither of the parties appeared to have learned of Dr. Evans' misrepresentation prior to his death.
 
 
 6
 Mrs. Evans timely filed a claim for death benefits. United, the company that had issued the policy then in effect, denied liability, stating that Dr. Evans' statements that he was a nonsmoker was a material misrepresentation that voided the policy ab initio.[2] Mrs. Evans then commenced this action, during the course of which much information emerged about how United had come to be Dr. Evans' insurer and about United's policy on smokers' misrepresentations.
 
 
 7
 Volunteer underwriters had approved Dr. Evans' application for a $500,000.00 policy, with Mrs. Evans as the beneficiary, on October 1, 1985. Brisco then asked United to review Dr. Evans' application. Brisco had apparently not consulted the Evans before bringing in United; certainly Dr. Evans never completed or signed a United application until he received a copy of his United policy.
 
 
 8
 On October 21, 1985, United approved Dr. Evans for a $500,000.00 whole life policy naming Mrs. Evans as beneficiary. United based its decision on the information in Dr. Evans' Volunteer application. After approving the policy, United created a United application for Dr. Evans by transcribing information from the Volunteer application onto a United form.[3] Neither application was ever attached to either the United or the Volunteer policy.
 
 
 9
 Chubb sent both the Volunteer and the United policies to Brisco on December 9, 1985. Chubb regarded the United policy as an "alternate" policy that would take effect only if Dr. Evans surrendered the primary Volunteer policy.
 
 
 10
 On January 3, 1986, Brisco delivered to Dr. Evans two copies of the transcribed United application, but not the Volunteer application, with the policies. Dr. Evans opted to hold the United policy and to surrender the Volunteer policy, and handed Brisco a $10,140.00 premium check.
 
 
 11
 The United policy states that its "issue date" is November 10, 1985 ("policy date"). The policy does not define "issue date". An affidavit from Jon D. Schneider, a vice-president of Chubb and of United, states that "issue date" as used in the United policy is synonymous with the phrase "policy date" used in the Volunteer policy, and that "[t]he terms are used in both policies to indicate a definite starting date ... the date used to determine, for example, when the incontestability [sic] and the suicide clauses begin to run ... [and from which] the cash value of the policy begins to build...."[4]
 
 
 12
 A wealth of evidence establishes that Dr. Evans' misrepresentations should have come as no particular surprise to United. United was well aware that smokers commonly misrepresented themselves as nonsmokers on life insurance applications.[5] United nonetheless decided, and repeatedly affirmed, that it would not amend its applications to warn that misrepresentations about smoking would result in proration, and much less in denial, of death benefits.[6] Apparently, none of United's competitors had declared that misrepresentations about smoking could prejudice an insurer, and United feared that to do so would leave it at a disadvantage in the marketplace. United had concluded that its proration approach to smokers' misrepresentations left it little chance of successfully contesting an action such as this on material misrepresentation grounds.[7] Shortly after Dr. Evans died, United changed its policy and began to treat smokers' misrepresentations as material misrepresentations entitling United to rescission.[8]
 
 
 13
 After a two-day trial, a jury returned an advisory verdict in response to special interrogatories. The jury found that Dr. Evans had misrepresented his use of tobacco in his insurance application, and that United had relied on the misrepresentation. The jury went on to find, however, that United's reliance would not have caused it to deny benefits altogether, but would instead have moved United to prorate benefits to the amount a smoker could have purchased for the same premium. The jury last found that United had told Dr. Evans that its practice with respect to misrepresentations about smoking was to prorate benefits. The district court adopted the jury's verdict and gave Evans a $339,014.00 judgment, with interest to run from the date of the verdict.
 
 II.
 
 14
 Because we believe them dispositive, we first address the issues Mrs. Evans raises in her cross-appeal. We conclude that because United did not attach a copy of Dr. Evans' application to the United policy by or on the policy's issue date, the district court erred in admitting evidence of Dr. Evans' smoking misrepresentation. Exclusion of the application effectively denies United its sole defense of material misrepresentation.[9] We accordingly reverse the district court's order that United pay a prorated death benefit, and remand for entry of a judgment of $500,000.00, the full death benefit under the policy.
 
 
 15
 Virginia Code Ann. Sec. 38.1-393 declares that "no [statements made by the insured] shall be used in defense of a claim under the policy unless contained in a written application and unless a copy of such statement or statements be endorsed upon or attached to the policy when issued."[10] The question for us is whether the United policy had an application attached "when issued."
 
 
 16
 Mrs. Evans directs our attention to the United policy document, which recites "Date of Issue--November 10, 1985". There is no dispute that on November 10, 1985, the United policy did not have attached a copy of either the Volunteer or the United application.[11] United's response is that the issue date was January 3, 1986, when Brisco delivered the policy to Dr. Evans and received the first premium payment. Our interpretation of Virginia law on this point persuades us that Mrs. Evans had the better of the argument.
 
 
 17
 Few Virginia cases even incidentally address the issue date of a life insurance policy. Both parties rely on Homestead Ins. Co. v. Ison, 110 Va. 18, 65 S.E. 463 (1909) and Southland Life Ins. Co. v. Donati, 201 Va. 855, 114 S.E.2d 595 (1960).[12] In Donati, the first Virginia Supreme Court case construing Sec. 38.1-393, the evidence suggested the insured had failed to reveal certain ailments, from which he later died. The court nonetheless forbade the insurer from relying on the misrepresentations, because the insurer had never attached a copy of the application to the policy. While the case did not require the court to define a policy's issue date, it contains several germane observations about Sec. 38.1-393.
 
 
 18
 The court agreed with the insured that "[Sec. 38.1-393] is remedial, enacted for the benefit of the insured, and should be liberally construed to effect its evident purposes, which are to declare what shall constitute the contract between the insurer and insured...." 114 S.E.2d at 596; cf. Condon v. Interstate Assur. Co., 850 F.2d 688 (4th Cir.1988) (interpreting Virginia law) (observing that terms in an insurance policy bear their ordinary meaning and favoring the policy construction that affords coverage). The court surveyed a number of cases from other states interpreting statutes similar to Sec. 38.1-393. All reveal a perception that the purpose of the statutes is to require insurers to attach, as of the date they decide to issue insurance, the statements on which their decision relied. Id. 114 S.E.2d at 597-99. We bear in mind the Donati court's parting admonition that "[Sec. 38.1-393] is couched in imperative and vigorous language. It should not be frittered away by nice distinctions, but should be construed so as to accord substance to its terms and make effective its purpose." Id. at 599.
 
 
 19
 Donati 's elucidation of the purposes of Sec. 38.1-393 guides our reading of Ison, a case that squarely addressed an insurance policy's issue date, though not in the context of Sec. 38.1-393. George Ison was a merchant who had applied to insure his inventory against fire loss. Ison received a policy dated February 8, 1907.[13] Ison suffered a fire loss on March 10, 1907. Among the insurer's defenses was that Ison had violated a condition of the policy by failing to submit an invoice of his inventory within thirty days of the policy's issuance.
 
 
 20
 The Ison court fixed the issue date on or about February 13, 1907 when the insured received the policy and tendered his premium. The court based its decision on its conclusion that to fix the issue date as the date on the face of the policy would impair the insured's ability to comply with the inventory condition.[14] The court also found that "numerous details and conditions of the contract" remained unsettled after February 8, and that no meeting of the minds occurred until Ison accepted the policy by tendering his premium. Id. 110 Va. at 23, 65 S.E. 465.
 
 
 21
 We believe the principles of Ison and Donati require us to fix the issue date of Dr. Evans' policy at November 10, 1985. United's choice to denominate November 10, 1985 as the policy's "issue date" distinguishes this case from Ison, and presents obvious problems for United's argument that the issue date really came almost two months later.[15] We read Ison to command an inspection of the legal and practical significance of the policy date as a predicate to resolving the dispute over issue date.
 
 
 22
 In this case, unlike Ison, the policy date was fraught with legal significance. Schneider, a United officer, stated that many of United's contractual obligations accrued on that date.[16] The policy document states that the policy will continue at a guaranteed premium for a five-year period beginning November 10. United's underwriter made clear that by November 10, United had firmly decided to insure Dr. Evans' life, and had prepared a final draft of the policy. No aspect of the policy remained unsettled after November 10, and there is no indication that United would have been willing to alter the policy had Dr. Evans wished it.
 
 
 23
 We believe Sec. 38.1-393 also presses the conclusion that the issue date fell on November 10. The Virginia insurance code repeatedly distinguishes a policy's issue and delivery dates.[17] These distinctions indicate both that the dates are not inevitably the same, as United would have us conclude, and that Virginia attaches legal consequence to a policy an insurer has decided to issue but has not yet delivered to the insured. We cannot, therefore, hastily conclude that the phrase "date of issue" in Sec. 38.1-393 means "date of delivery." We interpret Sec. 38.1-393 to require the insurer to attach the information it relied on in issuing insurance to the policy on the date the policy takes effect.[18] As we have observed, the policy took effect on November 10, 1985.
 
 
 24
 We also perceive, as did the court in Ison, a burden on insureds were we to accept the insurer's definition of the issue date. It would be difficult for an insured to contest an insurer's claim that misrepresentations were material in its decision to insure if the insurer did not attach, contemporaneous with its underwriter's approval of insurance, the information upon which it relied. The tortuous progress of Dr. Evans' applications amply illustrates that the insurer was in the best position to prepare a record of its decision. We therefore conclude, based on Sec. 38.1-393 and Virginia case law, that the issue date of Dr. Evans' policy was November 10, 1985. Our holding is, therefore, that the district court erred in admitting the application.
 
 
 25
 At the conclusion of the hearing on the parties' post-trial motions, counsel for United noted that he had overlooked a Virginia statute he believed supported a larger interest award. Mrs. Evans shortly thereafter submitted a written motion under Fed.R.Civ.P. 60(b) for relief from judgment insofar as it directed interest to run from September 2, 1987, the date of the verdict. Mrs. Evans argued that under Va.Code Ann. Sec. 38.2-3115, interest should run from April 20, 1986, the date Mrs. Evans claims she presented United with evidence of her husband's death. Mrs. Evans also protested the 7.22% annual interest rate assigned in the judgment, contending that the correct rate had been 6% from April 20, 1986, to July 1, 1987, and 8% thereafter.[19] Mrs. Evans conceded that she had identified the wrong interest statute in her earlier brief on the issue, but that United would not be prejudiced were the court to rectify the error. United for its part argued that August 10, 1986, was the date of proof of death and that the interest statutes on which Mrs. Evans relied were not mandatory.
 
 
 26
 The district court denied all of the parties' post-trial motions. The court concluded that Dr. Evans' misrepresentations made an award of full benefits "manifestly unjust and contrary to the verdict." Because United's reliance had been only partial, however, the court found equally unjust an outright denial of benefits. The court accordingly let its judgment lie.
 
 
 27
 We affirm the district court's denial of Mrs. Evans' motion for relief from judgment. While we note that our award of full recovery to Mrs. Evans undercuts the rationale the district court advanced for denying the motion, we believe two principles dovetail to require affirmance. The first principle is that disposition of a motion under Fed.R.Civ.P. 60(b) is within the sound discretion of the district court. Universal Film Exchanges, Inc. v. Lust, 479 F.2d 573, 576 (4th Cir.1973); Wood v. Kling, 98 F.R.D. 319, 320 (E.D.Va.1983). The second is that a lawyer's ignorance or carelessness do not present cognizable grounds for relief under 60(b). Lust, 479 F.2d at 576; see also Link v. Wabash Railroad Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (holding that sua sponte dismissal of an action because of counsel's unexcused conduct does not unjustly penalize the client). While the district court may have been justified under Lust in granting the motion based on the Virginia statutes cited by Mrs. Evans, it was within its discretion to deny the motion based on Mrs. Evans' counsel's laxity in not identifying the statutes earlier.
 
 III.
 
 28
 We now briefly address United's arguments against the judgment. United contends, in a nutshell, that Dr. Evans made a material misrepresentation entitling United to the remedy of rescission. See, e.g., Hawkeye Security Insur. Co. v. Government Employees Insur. Co., 207 Va. 944, 154 S.E.2d 173, 176 (1967) (a misrepresentation material to the risk when assumed voids an insurance contract). United observes that the jury found a misrepresentation by Dr. Evans and reliance on the misrepresentation by United. United proposes that these findings amount to a finding of material misrepresentation. United therefore urges us to conclude that the verdict and judgment, which put United where it would have been had it followed its own proration policy, lack legal foundation.[20]
 
 
 29
 United's practices leave it in a difficult position in this as well as the dispositive portion of this appeal. United does not dispute the finding that its response, had it learned of Dr. Evans' misrepresentation before changing its policy on smokers' misrepresentations, would have been to prorate death benefits. In other words, the extent to which a smoker's misrepresentation could be material to United, the extent to which United would rely, had only to do with the benefits payable. This is just what the jury found, and what the amount of the judgment reflected.
 
 
 30
 We do not believe that Virginia recognizes the crabbed definition of materiality that United urges us to apply. Virginia clearly distinguishes the factual issue of a statement's truth or falsity from the legal issue of a false statement's materiality. Old Republic Life Insur. Co. v. Bales, 213 Va. 771, 195 S.E.2d 854, 856 (1975). Virginia defines a material fact as one that would cause the insurer to reject the risk or to accept it only at a higher premium. Chitwood v. Prudential Insur. Co. of America, 206 Va. 314, 143 S.E.2d 915, 919 (1965). The fact at issue here is, of course, not such a one; United admits that its practice through and after the date it delivered Dr. Evans' policy was to prorate death benefits rather than to reject or increase the cost of coverage. We doubt, therefore, that a smokers' misrepresentation could have been material to the risk United assumed during the period at issue.
 
 
 31
 The district court was correct to offer the jury the options of finding that United relied completely or only partially on Dr. Evans' misrepresentation. The first would have amounted to an advisory finding of material misrepresentation. The second represents an illumination of an area the insurance contract left in shadow. The application recited that misrepresentations other than of age or sex "may result in the loss of coverage under the policy." This recitation leaves unclear whether and to what extent United would reduce coverage for a smokers' misrepresentation. These were the cardinal issues in dispute before the jury. United has not challenged the factual support for the jury's findings, and we find no basis to conclude that the instructions misstated Virginia law.
 
 IV.
 
 32
 For the reasons set forth above, we are of the opinion, and so hold, that the district court erroneously admitted Dr. Evans' insurance application. Because the application is unavailable to it, United has no defense against a judgment for the face amount of the policy, and so we reverse the district court's entry of a judgment for $339,014.00, and remand the case for the rendition of a judgment for $500,000.00 in favor of Mrs. Evans. The determination of interest will not be disturbed.
 
 
 33
 REVERSED AND REMANDED.
 
 
 
 [1]
 Dr. Evans appears to have misled his family as well as his insurer. Mrs. Evans believed her husband had given up smoking some eighteen months prior to completing the Volunteer application. Testimony from co-workers established that Dr. Evans continued to smoke at work
 
 
 [2]
 United based its initial denial on Va.Code Ann. Sec. 38.2-309 (1986), which states "No statement in an application ... shall bar a recovery upon a policy of insurance unless it is clearly proved that such answer or statement was material to the risk when assumed and was untrue."
 
 
 [3]
 Carol Elmore, the Chubb underwriter who approved issuing both policies, testified that she would not have approved a policy based on the United application because the application omitted medical information. Elmore never saw the United application until after Dr. Evans' death
 Testimony from Bobbie Burnett, the head of United's Policy Issue Department, indicated that while Chubb's insurance subsidiaries were not permitted to transfer applicant's medical information from one form to another, subsidiaries were authorized to transcribe information about smoking habits. There is no dispute that the United application, like the Volunteer application, stated that Dr. Evans had not smoked within the preceding twelve months.
 
 
 [4]
 Elmore, the Chubb underwriter, testified similarly that the "issue date would be the day an underwriter approves [the policy], or however many days after that that the [insurer] specifies...."
 
 
 [5]
 An internal United memorandum drafted by Richard Billings, United's chief underwriter, estimates that 10% of United's smoker applicants obtained nonsmoker policies through misrepresentations, for a loss to United, in 1985 alone, of at least $1,338,000.00. The memorandum warns, however, that "[t]o change our procedure ... to charge smoker rates for anyone who has tested positive for nicotine ... would not be competitive in the marketplace."
 
 
 [6]
 For example, a December 5, 1983 memorandum from Fred Condon, United's vice president and general counsel, prompted United's operating staff to declare that "[w]hile it might be possible to amend the policy to provide further protection to the Company [from smokers' misrepresentations], competition has not taken this approach, and the Company will thereafter continue with its present policies in this area."
 
 
 [7]
 Condon's December 5, 1983 memorandum states, "[i]n my opinion ... none of our policies allow [sic] us any protecton [sic] after the Insured has died. As [the Operating Staff] will recall, any misrepresentation must be material for it to be used as a defense to payment of the policy proceeds ... A misrepresentation as to smoking status is similar to misrepresentation concerning past medical history which would result in a moderate substandard rating...." The minutes of the Operating Staff meeting, held December 22, 1983, cite Condon's memorandum and reiterate that "[United] has little chance of contesting a policy after the insured has died ... for misrepresentation of non smoking [sic] status."
 
 
 [8]
 A handwritten memorandum from Condon to Schneider, dated December 10, 1985, indicates that United was then reconsidering its proration policy. The policy was still under review when Dr. Evans tendered his first premium check; a January 9, 1986, memorandum from Billings recommends further review and cautions that "[i]f [United] continue[s] to take a 'passive' position at claim time, I believe we will continue face [sic] results that do not reflect actual smoking habits." A January 28, 1986, memorandum notes United's current position as still that "of adjusting the death benefit to that purchased by a smoker rate...."
 United did not publish a new policy to its claims personnel until March 25, 1986, six days after Dr. Evans' death. It is interesting to observe, though the parties have not made anything of it, that United instructed its personnel to "note that before denying a death claim due to misrepresentation of smoking habits, you should determine the cause of death, i.e., there should be a reasonable relationship between the two ... where the cause of death bears no relationship to smoking, e.g. accident ... it should be handled as if the nonsmoker misrepresentation had not been made." (emphasis in original). The accident from which Dr. Evans died seems to have had nothing to do with smoking.
 
 
 [9]
 United's answer interposed the affirmative defense of fraud and waiver by Dr. Evans, although United may have pled these as aspects of its material misrepresentation defenses. The only defense the jury considered was misrepresentation. United did not object that the jury instructions inaccurately or incompletely presented its defense
 
 
 [10]
 Dr. Evans' United policy provides, in accordance with a separate clause of Sec. 38.1-393, that "[n]o statement made by or for the Insured will be used to void this policy or deny a claim if it does not appear in the attached copy of the application." Virginia has repealed Sec. 38.1-393 since Dr. Evans' death, but the parties do not dispute that the section controls in this case. A recently enacted statute, Sec. 38.2-3304 (1986), contains a clause similar to the pertinent clause of Sec. 38.1-393. The district court, in a dictum to its memorandum opinion granting Mrs. Evans' motion for partial summary judgment, considered that another recently enacted provision, Sec. 38.2-3300, makes Sec. 38.2-3304 inapplicable in this case. We need not consider that conclusion in resolving this appeal
 
 
 [11]
 The record leaves unclear whether United had created the United application by November 10, 1985. The district court granted Mrs. Evans' motion for partial summary judgment prohibiting United from using alleged misrepresentations in Dr. Evans' Volunteer application to void its obligations under the United policy. The court found no dispute that United had never attached the Volunteer application to the United policy and therefore could not rely on statements in that application to oppose Mrs. Evans' claim. United has not appealed this ruling, and our decision accordingly considers only whether the United policy, when issued, had attached a copy of the United application
 
 
 [12]
 The district court relied entirely on Donati in granting Mrs. Evans' motion for partial summary judgment
 
 
 [13]
 The opinion does not indicate whether the policy declared this date the "issue date."
 
 
 [14]
 The court determined that "by antedating the policy or delaying its delivery" beyond the policy date, an insurer could manipulate the time practically available to comply with the inventory condition. The court observed that Ison had not known of the condition until he received the policy
 
 
 [15]
 We recognize that two general principles of insurance law, that of according policy terms their ordinary meaning and of construing terms strictly against the insurer, favor interpreting the issue date as the policy date. We believe, however, that Ison and Donati instruct us to examine the relationship of the policy and statutory phrases in greater depth
 
 
 [16]
 United did not become liable to pay a death benefit until January 3, 1986, when Dr. Evans tendered his first premium payment. Based on Schneider's explanation of the insurance arrangement, however, we cannot accept United's assertion that it had no contractual relationship with Dr. Evans before that date
 
 
 [17]
 See, e.g., Va.Code Ann. Secs. 38.2-3104 ("No life insurance policy delivered or issued for delivery in this Commonwealth shall be backdated more than six months from the date [of the insurance application] ..."), 38.2-3300 ("No individual life insurance policy shall be delivered or issued for delivery ... unless it [complies with subsequent provisions]"), 38.2-3301 (providing insured a ten-day right to examine delivered policy); cf. Va.Code Ann. Secs. 38.2-3106 (generally barring insurer from defense of suicide if insured was a Virginia resident at the date of issue), 38.2-3108 (requiring provision that age misrepresentations entitle insurer to prorate benefits to amount applicable to the correct age at the time of issue)
 
 
 [18]
 Our resolution of the question of issue date makes it unnecessary to consider whether the United application, which was not the application on which United relied in issuing insurance and which omitted information essential to the underwriting decision, would have been a satisfactory application under Sec. 38.1-393
 
 
 [19]
 Va.Code Ann. Sec. 6.1-330.9 (1987) set the 6% rate. Va.Code Ann. Sec. 6.1-330.53 (1987 Supp.) repealed Sec. 6.1-330.9 and fixed an 8% rate
 
 
 [20]
 The logical implication of United's argument is that the special verdict interrogatories, which allowed the jury to find that United only partially relied on Dr. Evans' misrepresentation, misstated Virginia law. We do not find any indication that United objected to the instructions before the district court, or indeed before us, or to the district court's adoption of the verdict. Were we treating the issues United raises as dispositive, we would for these reasons have grave doubts about whether United has properly preserved the issues for appeal