**Denise H. ANDERSON, Plaintiff,**

**v.**

**PRIMERICA LIFE INSURANCE, CO., Defendant.**

Civil Action No. 95–0044–C.

United States District Court, W.D. Virginia, Charlottesville Division.

Aug. 6, 1996.

Henry Duncan Garnett, Jr., Louisa, VA, David McClellan Williams, Jr., Law Office of H. Duncan Garnett, Jr., Louisa, VA, for plaintiff.

Edwin Ford Stephens, Christian, Barton, Epps, Brent & Chappell, Richmond, VA, for defendant.

*MEMORANDUM OPINION*

MICHAEL, Senior District Judge.

This matter comes to the court upon plaintiff's objections to United States Magistrate B. Waugh Crigler's Order of June 20, 1996, which recommended that plaintiff's motion for partial summary judgment pursuant to Fed.R.Civ.P. 56 be denied. For the reasons stated below, the court adopts the Magistrate's recommendation and denies plaintiff's motion for partial summary judgment.[1]

I.

On September 3, 1990, Plaintiff Denise Anderson and her husband, Francis

---

**1.** Under *Orpiano v. Johnson,* 687 F.2d 44, 48 (4th Cir.1982), the court is obliged to review this case

de novo, because plaintiff has objected to the Magistrate's recommendation.

Anderson, applied for a $100,000 life insurance policy from Defendant Primerica Life Insurance Company, formerly Massachusetts Indemnity and Life Insurance Company ("MILICO"). The agents that sold plaintiffs the policy, Michael Curtis and Andrea Black (plaintiff's cousin), were told by Mr. Anderson that although he had smoked in the past, he had not smoked in the past twelve months. Notwithstanding Mr. Anderson's answers, Agent Michael Curtis responded in the negative to all three of the following questions.

3.a. Have you smoked cigarettes in the last 12 months?

3.b. Have you previously smoke cigarettes? If stopped, when?

3.c. Do you smoke cigarettes now? If yes, how long?

_____ years; number of packs per day?
_____

On September 25, 1990, the date of issue, MILICO sent the life insurance policy, to which the original application was attached, to Agent Michael Curtis, who in turn gave it to Agent Andrea Black. Plaintiff and her husband paid premiums on the policy for approximately five months although they had not yet received the policy and the application. On March 25, 1991, Mr. Anderson was killed in a car accident. Two days later, Andrea Black delivered the insurance policy, along with the application, to Mrs. Anderson, and Mrs. Anderson then submitted a claim under the policy. MILICO denied the claim based on the allegedly material misrepresentation contained in question 3.a. which rendered the policy void ab initio. MILICO relies on notes from a University of Virginia medical record, as well as various affidavits attesting to the fact that Mr. Anderson smoked. Plaintiff denies that Mr. Anderson smoked during the past twelve months.

Plaintiff moves the court for partial summary judgment pursuant to Fed.R.Civ.P. 56, arguing that because the life insurance policy and application were delivered only after her husband's death, defendant cannot assert the defense of material misrepresentation against her claim under Virginia law. Defendant counters that Virginia law does not require physical delivery of an insurance policy as a condition to the assertion of a defense based on material misrepresentation.

## II.

The parties agree that the main statutory provision relevant to the disposition of this case is Va.Code Ann. § 38.2–3304. Both parties rely primarily on three cases, *Evans v. United Life & Accident Ins. Co.*, 871 F.2d 466 (4th Cir.1989); *Southland Life Insurance Co. v. Donati*, 201 Va. 855, 114 S.E.2d 595 (1960); and *Homestead Insurance Co. v. Ison*, 110 Va. 18, 65 S.E. 463 (1909).

Va.Code Ann. § 38.2–3304 provides, in pertinent part, as follows:

No statement shall be used in defense of a claim under the policy unless it is contained in a written application that is endorsed upon or attached to the policy when issued or delivered.

Plaintiff argues that this statute mandates actual delivery before an insurance company may invoke the defense of material misrepresentation. First, plaintiff maintains that the purpose of the statute is to protect the insured, which purpose would be frustrated by reading "issued" and "delivered" to signify different events. For this proposition, she cites, inter alia, *Evans*, which emphasizes that the statute was enacted for the protection of the insured. Relying on supportive language in *Donati*, plaintiff argues that the statute meant to ensure that the insured would have possession of his policy and application during his lifetime. Plaintiff insists that while normally courts should not render statutory language redundant, when a statute uses words such as "or," courts should be less hesitant to do so because conjunctions are so often carelessly used. In further support of this argument, plaintiff relies on *Ison*, under which, she claims, the delivery date and the date of issue are one and the same. Finally, plaintiff notes that Va.Code Ann. § 38.2–3301 permits a policy holder to rescind a life insurance policy within ten days of delivery, but fails to articulate what the significance of that provision is to this case.

Defendant responds that the statute only requires delivery *or* issuance, and the policy

was undisputably issued prior to the applicant's death and all other statutory requirements were complied with (including § 38.2–3301). Defendant has by far the better of the argument.

The case must, of course, be analyzed in the backdrop of a very real handicap imposed by courts in favor of insureds and against insurers. Plaintiff correctly restates the law when she asserts that courts favor the construction that affords coverage, *see Condon v. Interstate Assur. Co.*, 850 F.2d 688 (4th Cir.1988), and construe policies against the insurer. Nonetheless, *Evans* precludes the interpretation of the statute urged by plaintiff. Although *Evans* construed the predecessor to § 38.2–3304, which did not contain the words "or delivered" in it,[2] the Fourth Circuit in *Evans* addressed an argument by an insurer that delivery and issuance were identical events and squarely rejected the argument. The statute construed in *Evans* stated as follows:

> [N]o [statement made by the insured] shall be used in defense of a claim under the policy unless contained in a written application and unless the copy of such statement or statements be endorsed upon or attached to the policy when issued.

Va.Code Ann. § 38.1–393.

In *Evans* the insurer did not attach the insured's application to his policy at the time of issuance; however, when the policy was delivered, the application was attached to the policy. The insurer argued that the requirements of attachment at the time of issuance were met because at the time of delivery the application was attached to the policy. The Fourth Circuit refused to allow the insurer to raise the issue of material misrepresentation, answering the insurer as follows:

The Virginia insurance code repeatedly distinguishes a policy's issue and delivery dates. These distinctions indicate both that the dates are not inevitably the same, as [the insurer] would have us conclude, and that Virginia attaches legal consequence to a policy when an insurer has decided to issue but has not yet delivered to the insured. We cannot, therefore, hastily conclude that the phrase 'date of issue' ... means 'date of delivery.' We interpret § 38.1–393 to require the insurer to attach the information it relied on in issuing insurance to the policy on the date the policy takes effect.

871 F.2d at 471–72.

*Evans's* holding departed, at least superficially, from *Ison*, which declined to fix the date of issue as that contained on the face of the policy, but rather fixed the date of issuance on the day the insured received the policy. The Fourth Circuit justified this inconsistency with the explanation that "[i]n this case, unlike *Ison*, the policy date was fraught with legal significance." *Id.* at 471.

Plaintiff attempts to reconcile her position with the unmistakably clear contrary language in *Evans* by asking the court to adopt 'heads, I win; tails, you lose' law. She presses that *Evans* discerned a difference between "issuance" and "delivery" because to do so favored the insured. Since in the case at bar the opposite conclusion would favor the insured, to be consistent with *Evans* this court should adopt a position contrary to the Fourth Circuit's, so the syllogism runs. This position must be rejected for several reasons. First, even though courts surely favor the insured over the insurer, they only do so under a quasi-presumption; no rule of law has been accepted, even tacitly, that whatever result favors the insured is the result that should prevail (regardless how implausible).[3] Second, while *Evans* expressed concern with

2. The words "or delivered" were added to the statute when it was recodified as § 38.2–3304, effective July 1, 1986.

3. Plaintiff argues that to read the statute in accordance with its plain language would lead to an absurd result—if the insurer were not compelled to deliver the policy to the insured, the insurer could hoard the policy in its office and fraudulently assert, after the death of the insured, a misrepresentation defense. First of all, no

allegation of fraud has been made in this case. Secondly, as defendant notes, the purpose of the statute is not so single-minded as plaintiff insists; while other Virginia statutes govern insurer fraud specifically, *see, e.g.,* Va.Code § 38.2–1831, this statute more generally seeks "to declare what shall constitute the contract between the insurer and the insured and eliminate defenses available to the insurer unless the statements relied upon are made in the manner and incorporated into the contract in the mode prescribed." *Donati*, 201 Va. at 857, 114 S.E.2d at

burdening insureds and endorsed a liberal construction of Virginia's statute, its express holding was that applicable Virginia law recognizes a difference between delivery and issuance.

Although *Donati*, like *Evans*, contains dictum that plaintiff construes to favor her argument—e.g., "the [l]egislature [intended] that the policy holder should have in his possession, during his lifetime, such statements or representations which might be claimed, after his death, to have been fraudulent, . . ." 201 Va. at 859, 114 S.E.2d at 597 (internal quotations and citations omitted)— the holding of *Donati* makes clear that it can provide no direct support for plaintiff's claim in this case. The court in *Donati* specifically states that "[t]he sole question presented is . . . whether or not the defense made by the company of fraud in the procurement of the policy is available to it when it omitted to endorse upon or attach to the policy . . . the application. . . ." 201 Va. at 858, 114 S.E.2d at 595. There was no question regarding whether issuance and delivery were synonymous.

Finally, despite plaintiff's implicit suggestion to the contrary, defining delivery and issuance to be distinct events in no way interferes with the requirement of § 38.2–3301 that an insured be given at least ten days to rescind the policy after its delivery. In fact, in this case, plaintiff had the option of rescinding her policy twenty days after Agent Andrea Black delivered it to her under the policy issued by defendant.

### III.

The statutory language here is clear, and *Evans* supports the plain language interpretation relied upon by defendants. Just as in *Evans*, the policy date is "fraught with legal significance." Hence, the *Donati* dicta is inapposite. Therefore, the court denies plaintiff's motion for partial summary judgment.

596. This purpose is achieved regardless whether the application is attached to a policy when delivered or issued.