**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-2182**

SNL FINANCIAL, LC,

Plaintiff - Appellee,

v.

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Charlottesville.  Norman K. Moon, Senior District Judge.  (3:09-cv-00010-nkm-bwc)

Argued: October 27, 2011          Decided: November 23, 2011

Before TRAXLER, Chief Judge, and GREGORY and KEENAN, Circuit Judges.

Affirmed by unpublished opinion.  Judge Keenan wrote the opinion, in which Chief Judge Traxler and Judge Gregory joined.

**ARGUED:** David Drake Hudgins, HUDGINS LAW FIRM, Alexandria, Virginia, for Appellant.  Thomas Eugene Albro, TREMBLAY & SMITH, Charlottesville, Virginia, for Appellee.  **ON BRIEF:** Patricia D. McGraw, TREMBLAY & SMITH, Charlottesville, Virginia; Dennis S. Rooker, DENNIS S. ROOKER, P.C., Charlottesville, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

KEENAN, Circuit Judge:

In this insurance coverage dispute, Philadelphia Indemnity Insurance Co. (Philadelphia) appeals the district court's award of summary judgment in favor of the plaintiff, SNL Financial, LC (SNL). The primary issue before us is whether the district court erred in holding that SNL timely notified Philadelphia of a "claim," as defined in SNL's insurance policy, thereby contractually obligating Philadelphia to defend SNL against that claim. We hold that the district court correctly determined that SNL complied with the insurance policy's notification requirements and, therefore, we affirm the district court's judgment.

I.

SNL, which is in the business of providing financial information to its clients, purchased an insurance policy (the policy) from Philadelphia in 2008. The policy covered losses, including damages and costs for legal defense, for "claims" against SNL involving certain employment actions occurring during the policy period, which ran from August 1, 2008 through August 1, 2009. The policy was a renewal of an insurance policy that SNL previously purchased from Philadelphia covering the

2

period from August 1, 2007 through August 1, 2008 (the original policy).[1]

The policy defines the term "claim," in relevant part, as:

1. a written demand for monetary or non-monetary relief; [or]

2. a judicial or civil proceeding commenced by the service of a complaint or similar pleading.[2]

The policy provides that a "claim" is made when SNL "first receive[s] notice of the Claim." The policy further states that SNL must provide notice of any claim to Philadelphia "as soon as practicable," but not later than 60 days after the expiration date of the policy if the claim was made during the policy period.

In January 2008, SNL received a letter from Murray Schwartz, a lawyer retained by Stephen Greenberg, a former SNL employee. In that letter, Schwartz asked to meet with SNL representatives to discuss "certain discriminatory conduct that occurred during the course of [Greenberg's] employment with [SNL], including its [sic] termination."[3]

_____

[1] As pertaining to this appeal, the substantive portions of the policy and the original policy are identical.

[2] The policy includes six other definitions of a "claim," none of which are relevant to this appeal.

[3] The full text of the body of Schwartz's initial letter, dated January 18, 2008, provides as follows: "We have been consulted by your former employee, Stephen Greenberg, to address, on his behalf, certain discriminatory conduct that (Continued)

After receiving this letter, SNL retained the services of an attorney, Sean Gibbons. Soon after retaining Gibbons, SNL received a second letter from Schwartz, in which Schwartz restated his request to meet with SNL representatives to "pursue a possible amicable resolution of the issues."[4] In neither of his two letters did Schwartz threaten litigation or make a demand, monetary or otherwise, that SNL resolve any potential lawsuit.

Over the next few months, Gibbons and Schwartz engaged in discussions concerning Greenberg's grievances. In June, Gibbons learned that Schwartz had prepared a draft complaint against SNL

occurred during the course of his employment with your company, including its [sic] termination. We write, at this time, to advise you of our desire to meet with your representative to discuss these issues. Our hope would be to arrive at an amicable resolution of the issues that exist. Given the circumstances that exist here, we believe such a discussion is warranted and might well prove helpful. If you would be good enough to have your designated representative contact our office, we would be pleased to arrange and participate in such a meeting. We trust you share our sentiment and will have us contacted to that end, so that together, we may join in efforts to resolve the matter."

[4] The full text of the body of Schwartz's second letter, dated January 25, 2008, provides as follows: "On January 18, 2008, we wrote in an effort to resolve certain issues that exist with respect to the above-referenced matter. In that letter, a copy of which is attached, we expressed our belief that a meeting with the appropriate person designated by you might prove helpful. To that end, we once again invite you to have your personal representative contact us so that we can pursue a possible amicable resolution of the issues, at this time."

on behalf of Greenberg. However, Schwartz refused to send Gibbons a copy of the draft complaint, and declined Gibbons' request that Schwartz "present [him] with a demand that [Gibbons] would take to" SNL.

Schwartz later allowed James Clark, a friend of Gibbons who also is an attorney, to come to Schwartz's office in New York to review the draft complaint. During Clark's visit to Schwartz's office, which occurred on July 30, 2008, Schwartz permitted Clark to view the draft complaint, which had not been signed. Schwartz prohibited Clark from taking notes during his review, and an intern in Schwartz's office "supervised" Clark as he examined the document. Although Clark was unable to make contemporaneous written notes, Clark stated in a memorandum written to Gibbons that same day that the draft complaint alleged two causes of action and, in an ad damnum clause, sought compensatory and punitive damages in the total amount of $16 million.

Immediately after reviewing the draft complaint, Clark had a brief conversation with Schwartz, during which Clark "asked if [Schwartz] had a demand that he was prepared to make." Schwartz declined Clark's invitation to issue a demand, stating that he "was awaiting the latest report from Mr. Greenberg's doctor." Before leaving Schwartz's office, Clark asked Schwartz to

5

contact Gibbons after Schwartz received the doctor's report and was "prepared to make a demand."

During this same time period, SNL was engaged in discussions with Philadelphia concerning renewal of the original policy. In its renewal application submitted on July 30, 2008, SNL avowed that it had not been the subject of, or involved in, any litigation during the previous 12 months. Philadelphia approved the renewal application and issued the policy to SNL, providing coverage for the period between August 1, 2008 and August 1, 2009.

On October 3, 2008, Greenberg filed a complaint against SNL in a New York state court, asserting causes of action for age and employment discrimination. SNL received a copy of the complaint by mail on October 20, 2008, and provided notice of the complaint to Philadelphia on October 27, 2008.

After receiving notice of the complaint filed against SNL, Philadelphia sent a letter to SNL disclaiming any duty to defend SNL against Greenberg's lawsuit, and declining to pay for SNL's defense or for any damages assessed against SNL. Philadelphia based its decision on SNL's alleged failure to provide Philadelphia with timely notice of Greenberg's claim, and SNL's alleged failure to disclose the existence of pending litigation when the original policy was renewed in August 2008.

In response to Philadelphia's decision to deny coverage, SNL filed a declaratory judgment action in a Virginia state court seeking a declaration that Philadelphia had a duty under the policy to defend SNL against Greenberg's claim. In response, Philadelphia filed an answer and counterclaim seeking a declaratory judgment that Philadelphia did not have a duty either to defend or indemnify SNL. Philadelphia also sought rescission of the policy based on SNL's statement in its renewal application that SNL was not involved in any "litigation" during the preceding twelve months.

At Philadelphia's request, the case was removed from the state court to the United States District Court for the Western District of Virginia. After considering the parties' cross-motions for summary judgment, the district court issued a memorandum opinion granting SNL's motion and denying Philadelphia's motion.[5] The district court held that "the plain meaning of the applicable policy provision[s] demonstrates that SNL satisfied the policy's conditions by furnishing notice of the Greenberg complaint on October 27, 2008." Philadelphia timely noted an appeal.

_____

[5] In its memorandum opinion, the district court did not address Philadelphia's claim for rescission of the policy. Although the district court denied SNL's request for attorneys' fees, SNL has not appealed from this determination.

7

Philadelphia raises two challenges to the district court's award of summary judgment in favor of SNL. Philadelphia first contends that the district court erred in concluding that SNL did not receive notice of Greenberg's "claim" until October 2008. According to Philadelphia, SNL received notice of a claim both in January 2008, when Schwartz wrote the two letters requesting a meeting with SNL to discuss Greenberg's grievances, and in July 2008, when Clark reviewed the unsigned draft complaint in Schwartz's office.[6] Second, Philadelphia argues that it is entitled to rescission of the policy, because SNL purportedly made a material misrepresentation on its renewal application by stating that SNL had not been subject of, or involved in, any litigation during the previous 12 months.

This Court reviews de novo the district court's award of summary judgment. S.C. Green Party v. S.C. State Election Comm'n, 612 F.3d 752, 755 (4th Cir. 2010). Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine

---

[6] Philadelphia does not maintain that any other evidence in the record, including evidence of an August 2008 telephone conversation between Schwartz and Gibbons during which Schwartz made a demand of $1.2 million dollars, constitutes a "written demand for monetary or non-monetary relief." (Emphasis added.)

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

In the present case, the parties agree that Virginia law governs the resolution of this dispute. Under Virginia law, "[a]n insurance policy is a contract, and, as in the case of any other contract, the words used are given their ordinary and customary meaning when they are susceptible of such construction." Hill v. State Farm Mutual Auto. Ins., 375 S.E.2d 727, 729 (Va. 1989). In the absence of any ambiguity, a court must "interpret the contract by examining the language explicitly contained therein." Graphic Arts Mut. Ins. Co. v. C.W. Warthen Co., 397 S.E.2d 876, 877 (Va. 1990). "Contracts of insurance are to be liberally construed in favor of the insured, but if they are plain and clear and not in violation of law or inconsistent with public policy, [courts] are bound to adhere to their terms." Pilot Life Ins. Co. v. Crosswhite, 145 S.E.2d 143, 146 (Va. 1965).

The first issue raised by Philadelphia requires that we determine when Greenberg made a "claim" against SNL, as that term is defined under the policy. If Philadelphia is correct in its assertion that Greenberg made a "claim" in either January 2008 or July 2008, then Philadelphia was entitled to disclaim coverage for defense of Greenberg's lawsuit. However, if SNL and the district court are correct that a "claim" was not made

9

until October 2008, then the claim was subject to the policy as renewed, and SNL's written notice to Philadelphia on October 27, 2008 complied with the notice requirement of the policy.

As applicable to the first issue raised by Philadelphia, the term "claim" is defined in the policy, in relevant part, as "a written demand for monetary or non-monetary relief." There is no ambiguity in this policy language. Therefore, we will apply the plain meaning of that language in considering Philadelphia's argument that Greenberg made a "claim" to SNL in January or July 2008. See Graphic Arts Mut. Ins. Co., 397 S.E.2d at 877.

Initially, we disagree that Schwartz's letters in January 2008 contained "written demand[s] for monetary or non-monetary relief." In these letters written on Greenberg's behalf, Schwartz: 1) refers to "certain discriminatory conduct" that purportedly occurred during Greenberg's employment with SNL; 2) states a "desire" to meet with SNL's representatives to "discuss" the issues, with a "hope" of arriving at an "amicable resolution"; and 3) requests that a SNL representative contact Schwartz to arrange such a meeting. These statements do not include a "demand" for any relief, either monetary or non-monetary. Therefore, we conclude that neither letter sent by Schwartz in January 2008 contained a "claim," as that term is defined in the policy.

10

Philadelphia alternatively argues, however, that the unsigned draft complaint, which Clark viewed in Schwartz's office in July 2008, constituted a "claim," within the meaning of the policy definition. We disagree with this argument.

The draft complaint that Clark read was unsigned, and Schwartz had refused to transmit a copy of the draft complaint to SNL. Most significantly, however, Schwartz had refused Clark's request that Schwartz make a demand, explaining that he was not prepared to do so because Schwartz was waiting for a report from Greenberg's doctor. Schwartz's statement to Clark thus expressly disavowed any suggestion that the unsigned draft complaint was intended as a "written demand for monetary or non-monetary relief." Therefore, we conclude that the unsigned draft complaint reviewed by Clark in Schwartz's office in July 2008 did not constitute a "claim" within the meaning of the policy definition. Accordingly, we hold that Greenberg did not make a "claim" against SNL until he filed his complaint in October 2008, and that, therefore, SNL complied with the notice requirement of the policy by reporting Greenberg's claim later that month.

Philadelphia argues, nevertheless, that the district court should have rescinded the policy because SNL falsely stated in its renewal application that SNL had not been involved in any "litigation" during the previous 12 months. In support of its

11

argument, Philadelphia relies on the principle of Virginia law that a misrepresentation of fact made by an insured may render an insurance contract void if the misrepresentation is material to the risk assumed by the insurer. See Evans v. United Life & Accident Ins. Co., 871 F.2d 466, 472 (4th Cir. 1989); Portillo v. Nationwide Mut. Fire Ins. Co., 671 S.E.2d 153, 155 (Va. 2009); Hawkeye-Security Ins. Co. v. Gov't Employees Insur. Co., 154 S.E.2d 173, 176 (Va. 1967); see also Va. Code § 38.2-309. We disagree with Philadelphia's argument that such a misrepresentation occurred in the present case.

Because the term "litigation" is not defined in either the renewal application or the policy, we apply its ordinary and common meaning. The term "litigation" commonly refers to a lawsuit or legal action, including all proceedings therein, instituted in a court of law to enforce a right or to obtain a remedy. S & M Inv. Co. v. Tahoe Regional Planning Agency, 911 F.2d 324, 327 (9th Cir. 1990) (citing Black's Law Dictionary 841 (5th ed. 1979)); Yockey v. Horn, 880 F.2d 945, 949 (7th Cir. 1989) (same). As the definition of the term suggests in this factual context, "litigation" does not begin until a legal action is initiated by the filing of a complaint or a similar document in a court of law.

Contrary to Philadelphia's contention, there was no pending "litigation," but only potential litigation, at the time SNL

12

completed its renewal application in late July 2008 stating that SNL was not the subject of, nor involved in, any "litigation" during the previous 12 months.  Thus, Philadelphia's assertion that SNL's application response was false cannot be sustained without effectively rewriting the question to include SNL knowledge of a "dispute" or of "potential" litigation. Accordingly, SNL's response that it was not involved in "litigation" was not a misrepresentation of fact, and Philadelphia is not entitled to rescission of the policy.

### III.

In conclusion, we hold that the district court did not err in determining that SNL was entitled to coverage of Greenberg's lawsuit under the policy.  Therefore, we affirm the district court's judgment.

AFFIRMED

13